[Civ. No. 29710.   Second Dist., Div. Four.   Apr. 5, 1967.]

WILLIAM SHARMAN, Plaintiff and Respondent, v. FRANK J. LONGO, Defendant and Appellant.

William P. Camusi and McLaughlin & McLaughlin for Defendant and Appellant.

E. Gregory Hookstratten and Robert S. Kaufman for Plaintiff and Respondent.

JEFFERSON, J.—In this appeal we are called upon to decide whether the trial court was justified in granting plaintiff's motion for a summary judgment against defendant.

Plaintiff, William Sharman, brought action to enforce an agreement signed by defendant Frank Longo and one Vito Guarino guaranteeing plaintiff's salary under an employment contract. According to plaintiff's complaint, by the terms of the employment contract, plaintiff, a professional basketball player and coach, was to serve as a player-coach for a newly formed corporation, the Los Angeles Professional Basketball Club, a professional basketball team known as the "Los Angeles Jets." When the corporation became insolvent, plaintiff sought recourse under the surety agreement.

Three documents form the basis for plaintiff's action, Exhibits "A," "B" and "C" which were attached to the complaint. It is alleged in the complaint that Exhibit "A" is an agreement of employment between plaintiff and the Los Angeles Jets, wherein plaintiff agreed to utilize his basketball talents for the Jets and in return the corporation agreed to pay him a salary of $20,000 per year for two years. Exhibit "B" is an addenda to Exhibit "A" which reduced in certain particulars plaintiff's duties and, in addition, provided that the corporation promised to post a bond to guarantee plaintiff's salary. When it was thereafter discovered the cost of securing the bond would be prohibitively high, it was agreed that the corporation could substitute in its place a surety agreement signed by two men. Exhibit "C,"

in which Longo and Guarino agreed to serve as personal sureties for the promised salary, was then executed. Although Exhibits "A," "B" and "C" were respectively dated April 11, April 28 and May 27, 1961, they were part of one single contractual transaction.

Defendant answered denying that he was a party either to the original contract (Exhibit "A") or to the addenda (Exhibit "B"). While admitting that he executed the surety agreement (Exhibit "C"), he denied that there was consideration to support it. He alleged that the three documents were not a part of one transaction; that they were executed and became effective on the separate dates indicated on the documents; that consequently, since the addenda and the surety agreement were executed after the original employment contract, the consideration supporting the latter did not support the guaranty.

An affidavit in support of his motion for summary judgment was filed by plaintiff, and a counteraffidavit was filed by defendant. In addition, the court had before it the depositions of plaintiff and defendant, together with the depositions of Guarino, Henry Clark and Leonard Corbosiero (the latter were officers of the Jet).[1] After a hearing, the court rendered a judgment against both defendant and Guarino for the unpaid salary due plaintiff in the sum of $17,682.90. Guarino admitted his liability on the surety agreement to the extent of one-half the unpaid salary and does not appeal from the judgment.

In plaintiff's affidavit he alleges these facts: In January 1961 he was contacted by Len Corbosiero (the president of the Jets) with regard to a coaching and managerial position with the newly formed professional basketball team; at the time he was employed by the Boston Celtics basketball team at a salary of $20,000 a year; he informed Corbosiero that before he would even consider the job he would have to receive a guaranty of at least $20,000 a year to move to California; while he understood that the documents he signed accepting the job (Exhibits "A" and "B") bear different dates, he recalled signing the documents simultaneously; part of the agreement was the guaranty of his salary of $20,000 a year for a period of two years; he came to Los Angeles on the basis of that guaranty, which he first thought would be cash in the bank, then a bond, but that it later turned out to be the

---

[1]The depositions are included in the record on appeal.

guaranty signed by defendant and Guarino (Exhibit "C");
prior to January 16, 1962, he had performed all the terms and
conditions of the agreement; on that date his services were
terminated when the league failed; he had been paid
$15,000.03 by the Jets; after the termination of his employ-
ment he demanded payment from defendant and Guarino on
the contract of guaranty; while Guarino offered to pay his
half, defendant refused; from January 16, 1962 through
April of 1963, the termination date of his two-year contract
with the Jets, he worked at other jobs and made a total of
$7,317.07; the salaries earned during the contract period
totaled $22,317.10; the guaranty for the two years being
$40,000, he was damaged in the amount of $17,682.90, or
$40,000 less the $22,317.10 he earned.

Guarino, in his deposition, stated that the guaranty provi-
sion of the contract was required by plaintiff during the
original negotiations and was a part of the original obligation
undertaken by the Jets. When they were not able to get the
surety bond initially provided for, as a substitute, he and
defendant signed the guaranty. Defendant participated in
some of the negotiations leading up to the execution of the
employment contract and was kept fully informed at all
times of the negotiations that went on. Guarino had dis-
cussed with defendant the fact that if there was no guaranty
plaintiff would not play for the Jets.

Corbosiero's deposition contains the statement that he had
explained to defendant, at a meeting prior to his (Corbo-
siero's) departure for Boston to conduct negotiations with
plaintiff, how important it was that they hire plaintiff; that
without him they had no club. At the meetings in Boston with
plaintiff's attorney, there were no negotiations in regard to
plaintiff's salary, as it was already agreed upon. What was
discussed was the guaranty; plaintiff's attorney did not want
plaintiff to sign a contract "unless there was some kind of
a guarantee." It was his understanding that plaintiff would
not go to work for the Jets without it. He personally did not
have any conversation with defendant regarding the guaranty.

Defendant's affidavit filed in opposition to the motion for
summary judgment contains the following statements: Con-
trary to Corbosiero's statement in his deposition, defendant
did not have any knowledge that plaintiff desired a surety
agreement until after April 11, 1961; he found out plaintiff
wished a surety bond in the latter part of April 1961, and,
at the request of Guarino, he sought to obtain a bond; when

he could not get the bond, Guarino asked him to execute Exhibit ''C''; Guarino assured him that signing the guaranty was merely a formality and that he would incur no liability thereon; he signed it on the basis of this representation; he was a member of the board of directors of the Jets but took no active part in the corporation's affairs and had no voice in hiring or firing of coaches or players; he was not aware of the negotiations which took place prior to the signing of plaintiff by the Jets but only knew that they were attempting to hire plaintiff; the first time he saw Exhibits ''A'' and ''B'' was after the filing of this suit.

In his deposition defendant indicated that Guarino and the ''office'' had told him that unless Sharman received the guaranty they could not get him to leave Boston.

Defendant maintains that the trial court improperly granted the motion for summary judgment, because an issue of fact was raised of whether or not there was consideration to support his promise of guaranty. He cites the rule that a suretyship obligation entered into after the principal obligation has been incurred must have a new consideration to support it.

We have no quarrel with defendant's position that the issue of whether or not there is sufficient consideration to support a contract is a question of fact (see *Estate of Thomson,* 165 Cal. 290. 296 [131 P. 1045]; *Patek & Co.* v. *Vineberg,* 210 Cal.App.2d 20, 22 [26 Cal.Rptr. 293]), and we agree that a contract of guaranty entered into after the primary agreement has been executed and the consideration supporting it has passed, requires a distinct consideration (*Rusk* v. *Johnston,* 18 Cal.App.2d 408 [63 P.2d 1167], 46 Cal.Jur.2d, Suretyship and Guaranty, p. 221). However, we cannot agree that there was an issue of fact before the trial court to support such a defense when the court below ruled on plaintiff's motion for summary judgment.

''The procedure for the entry of a summary judgment provides a method by which, if the pleadings are not defective, the court may determine whether the triable issues apparently raised by them are real or merely the product of adept pleading. The question therefore is not whether defendant states a good defense in his answer but whether he can show that the answer is not an attempt 'to use formal pleading as means to delay the recovery of just demands.' [Citations.] Code of Civil Procedure, section 437c, therefore specifically provides that on motion for summary judgment a valid complaint may be dismissed or a valid answer stricken and the motion granted

'unless the other party, *by affidavit or affidavits* shall show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue of fact.' (Italics added.) ▮ Since under that section 'an answer may be stricken out, even though a perfect defense may be stated therein, unless the defendant by his affidavits shows facts to substantiate the defense' [citations], a failure to file affidavits showing such facts cannot be remedied by resort to the allegations or denials of a verified answer. The answer may be stricken and judgment entered in accord with the uncontroverted allegations of plaintiff's affidavits. [Citations.]'' (*Coyne* v. *Krempels*, 36 Cal.2d 257, 262-263 [223 P.2d 244].)

The above quote from *Coyne* v. *Krempels* answers any suggestion by defendant that he may rely on his answer to provide his defense.

Plaintiff's affidavit, as indicated above, states that when first contacted in regard to the coaching job with the Jets, he told the contacting officers of the Los Angeles club that he would have to have a salary guaranty at least equal to what he was then making with the Boston club; this guaranty, namely, $20,000 a year for two years, was subsequently provided for in Exhibit ''B'' requiring the Jets to furnish a bond; he signed this document simultaneously with Exhibit ''A,'' the primary employment contract; the parties thereafter agreed that Exhibit ''C''—the personal guaranty of appellant and Guarino—would be substituted in the place of the bond when it was discovered that the bond would be too costly to secure.

The depositions of Guarino and Corbosiero support plaintiff's statement of the facts. ▮ Defendant's counteraffidavit fails to disclose (as does his deposition and the depositions of the other officers of the Jets), no matter how liberally construed, any evidence supporting the defense that the guaranty lacked consideration because it was not part of the original contract. No facts are alleged disputing plaintiff's statement (or that of Guarino and Corbosiero) that the guaranty was promised as part of the original contract of employment.

In his counteraffidavit defendant merely states that he personally had no knowledge that plaintiff required a salary guaranty at the time of the original negotiations; and that he was not a party to the negotiations culminating in the execution of Exhibits ''A'' and ''B.'' Assuming what defendant says is true, it is no defense against plaintiff's suit on the guaranty.

Since the agreement between plaintiff and the Jets required two guarantors, plaintiff was not bound to perform until the guarantors were supplied. Once defendant had signed the guaranty, plaintiff was no longer free to withdraw. This constituted the detriment to plaintiff which is the consideration for defendant's guaranty.

On the basis of the facts stated in plaintiff's affidavit the court correctly granted the motion for summary judgment.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied April 19, 1967, and appellant's petition for a hearing by the Supreme Court was denied May 31, 1967.