[Civ. No. 26598. First Dist., Div. Four. Apr. 21, 1970.]

OAKLAND BANK OF COMMERCE, Plaintiff and Respondent, v. T. W. WASHINGTON et al., Defendants and Appellants.

794

**COUNSEL**

Hiawatha T. Roberts, Markley & Cooke, Tom B. Markley and Robert C. Burnstein for Defendants and Appellants.

Hagar, Crosby & Rosson and Ronald A. Wagner for Plaintiff and Respondent.

## OPINION

**DEVINE, P. J.**—Appellants each signed an instrument entitled "Continuing Guaranty," by the terms of which they guaranteed the indebtedness of Pacific Empire Loan & Investment Corporation, to respondent, Oakland Bank of Commerce, to the amount of $60,000. The word "indebtedness" is defined in the guaranty as "used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Borrowers or any one or more of them, heretofore, now, or hereafter made, incurred or created. . . ." The borrowing corporation is bankrupt. The bank has brought this action against the guarantors for the amount due on a promissory note of the corporation which was issued before the making of the guaranty.[1]

Appellants contend that there was no consideration for the guaranty in so far as it purports to cover past indebtedness, and that the contract was susceptible of two meanings, one of which is that only future debts are to be guaranteed and that this is the meaning which was understood by appellants.

The court directed a jury verdict in the amount due on the unpaid note, in the amount of $21,665.85, to which there have been added interest of $4,887.47, attorneys' fees of $4,000, and costs.

### Consideration

█ A contract of guaranty made after the primary agreement has been executed and the consideration supporting it has passed requires a new consideration. (*Challenge-Cook Bros., Inc.* v. *Lantz,* 256 Cal.App.2d 536, 539 [64 Cal.Rptr. 239]; *Sharman* v. *Longo,* 249 Cal.App.2d 948, 952 [58 Cal.Rptr. 79]; *Rusk* v. *Johnston,* 18 Cal.App.2d 408, 409 [63 P.2d 1167]; Civ. Code, § 2792; 46 Cal.Jur.2d, Suretyship and Guaranty, §§ 21, 22, pp. 219-224.)

█ Appellants argue that the debt owed to respondent bank by Pacific Empire Loan at the time of the execution of the guaranty was not in jeopardy, nor was the bank about to call it. The bank did not forbear to do anything which it would have done if there were no guaranty; wherefore, say appellants, the bank suffered no detriment. In the matter of *forbearance,* or lack of it, appellants' point appears to be good.

█ But the present or future lending of money is sufficient consideration to support the guaranty of a loan that was made before the execution

---

[1]Because all three guaranties are identical in form, we shall refer to them as "the guaranty."

of the continuing guaranty. (*Beverly Hills Nat. Bank* v. *Glynn,* 267 Cal. App.2d 859, 867 [73 Cal.Rptr. 808].) In the instant case, four additional loans were made, each in the amount of $10,000. These were repaid. But there was uncontradicted testimony of the loan officer of the bank, who had the power to and did consummate the loans, that he told Charles W. Goady, vice president of Pacific Empire Loan, who negotiated the matter for that company, that in order to effect the loans, the guaranty of appellants was needed. This was confirmed by the testimony of Mr. Goady, one of the defendants.[2] The other defendants, appellants herein, had become stockholders and directors of Pacific Empire Loan. (These facts are likewise to be considered in respect of consideration. (*Patek & Co.* v. *Vineberg,* 210 Cal.App.2d 20, 22-23 [26 Cal.Rptr. 293].))

Appellants contend that there was no consideration, despite the new advances of funds, because there were essentially *two* transactions and not a single, integrated one. The second transaction, say appellants, namely, the arrangement for the new loans, was completely separate from the earlier loans, and there was, therefore, nothing received by appellants in return for a retrospective guaranty. But the company was a continuing entity. The new funds were expected to be of advantage to the company. Appellants' guaranty was needed for this purpose. A presumption of consideration exists because of the written agreement. (Civ. Code, § 1614.) The evidence does not dispel, but even confirms the presumption. There was consideration for the guaranty, as a matter of law.

### Parol Evidence

Although the trial judge admitted parol evidence, the testimony of appellants as to their understanding of the guaranty, he cancelled it in effect by directing the verdict. Appellants contend that under recent liberalizing decisions on the parol evidence rule, unilateral understanding of appellants is admissible to show that the language of a written contract, in the light of all of the circumstances, is fairly susceptible of the interpretation which they contend for—that is, that the guaranty applies to the present and future, not to past indebtedness.

Appellants' testimony about their actions, conversations and thoughts in respect of execution of the guaranty are now to be summarized. The testimony of appellant Patterson was that he did not know of the pre-existing loan, although he did know that there was a banking relationship between the bank and Pacific Empire Loan; that he had never before signed a continuing guaranty; that he read the guaranty carefully; that he understood

---

[2]Although Mr. Goady purports to be an appellant, his notice of appeal was not timely filed. His appeal must be dismissed.

that he was guaranteeing a future line of credit; that Mr. Goady, who was spokesman for Pacific Empire in dealing with respondent bank, told him that there would probably be need for no more than $10,000 of the $60,000 which was being guaranteed, because stock would be sold. It was Patterson's role to be a public relations man for the company and to bring in a larger number of stockholders. He also expected, of course, a yield from his investment.

Mr. Fort testified that he knew that the bank would not lend the first $10,000 additional to the $30,000 already advanced without the guaranty of all five directors; that he understood the word "continuing" as an "advance instrument" to allow borrowing of varying amounts but never to exceed the amount of the guaranty—this in relation to a continuing guaranty of prospective loans from a San Jose bank; but in the case of the San Jose bank funds were advanced after the execution of the guaranty; that he had no understanding in his own mind that he was guaranteeing the amount of the loan that the company was going to use after the date of the guaranty; that he had no understanding that he was guaranteeing prior loans.

Appellant Washington testified that he did not read the guaranty before signing; that Goady told him they were guaranteeing a $30,000 new line; that Goady never said that the guarantors would guarantee the prior loan; that he had not read the guaranty which he had signed at the San Jose bank, but that an officer of that bank had explained to him that the nature of the continuing guaranty was to cover any and all "further borrowings" and that his understanding of what a continuing guaranty is did not change between the time of the San Jose transaction and that with the Oakland Bank; that he knew there was no prior debt to the San Jose bank.

Two of the appellants, Fort and Washington, did not read the contract. Although it is a rather lengthy document, it contains the definition of indebtedness near its beginning. The words and figures "sixty thousand dollars ($60,000.00)" an amount twice that of the maximum expected future loans appear prominently.

Patterson read the document carefully, he testified. He offered no explanation of the effect on him of the "heretofore" expression except that he did not comprehend the document as fully as he might have.

It is true that the parol evidence rule is generally thought to have been liberalized in recent years. But there is nothing in the factual situation in this case which approaches that of the leading case of *Pacific Gas & Elec.*

*Co.* v. *G. W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641]. In that case, as in others where the written contract was fairly susceptible of two meanings, evidence of dealings between the parties (admissions of one party's agents and of the other party's conduct under similar contracts which had been made between two parties) was held admissible even though to the trial judge the writing might seem to be clear and unambiguous. ■ In our case, the testimony of appellants had nothing to do with negotiations with respondent bank. Not one of the appellants had any direct contact with anyone at the bank before or at the time of execution of the guaranty. Their contact was with Goady, the officer of the company of which they were directors.

The testimony of appellants had to do with their own affairs, actions and understandings. They were largely influenced, it appears from a reading of the record, by the statements made to them by Mr. Goady, vice president of their own company. The failure of two of the appellants to read the contract cannot be charged to respondent bank. Nor can failure of the third, who read it carefully, to comprehend its contents. ■ The rule relating to contracts of adhesion does not apply. This rule has been applied to such matters as exceptions to reasonably expected coverage in insurance policies (*Gray* v. *Zurich Ins. Co.,* 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168]; *Barrera* v. *State Farm Mut. Auto. Ins. Co.,* 71 Cal.2d 659, 668 [79 Cal.Rptr. 106, 456 P.2d 674]); clauses exculpating a title insurance company from the consequence of its own negligence (*Akin* v. *Business Title Corp.,* 264 Cal.App.2d 153, 158-159 [70 Cal.Rptr. 287]); and limitations on city employees' pensions (*Bellus* v. *City of Eureka,* 69 Cal.2d 336, 350-351 [71 Cal.Rptr. 135, 444 P.2d 711]), wherein the matter was of quasi-public policy and one of the parties had reduced bargaining power in entering a standardized contract prepared by the other party. In such case, the exception, exclusion or limitation must be expressed in such conspicuous form as to draw attention of the ordinary person entering the contract. But in this case the contract of guaranty, in its essential parts, is in positive form, that is, it creates a liability, it does not limit a liability of the preparer of the contract. The definition of indebtedness is close to the beginning of the contract and it is followed by the amount, in words and figures, "Sixty Thousand and No/100 - - - - - Dollars ($60,000.00)." This sum is twice the maximum amount of the anticipated future advances. Anyone reading, with a fair degree of attention, this agreement creating a large contingent liability would be warned before signing of the broad meaning of the word "indebtedness." Moreover, appellants were experienced in the business world. Patterson was a licensed real estate broker, a

licensed insurance broker, and had been director of a real estate investment company and of a title insurance company. His net worth, shown in the financial statement which he submitted close to the time of the guaranty, was $191,925. Fort was a college graduate whose net worth was $318,000. Washington too was a college graduate and had been a real estate broker for 22 years. His net worth was $266,000.

Appellants contend that there is an essential ambiguity in the written contract because, although there is specific reference to guaranty of debts heretofore incurred, the heading of the document is "Continuing Guaranty," and this necessarily refers to future debts. This, say appellants, is because of section 2814 of the Civil Code, which reads: "A guaranty relating to a future liability of the principal, under successive transactions, which either continue his liability or from time to time renew it after it has been satisfied, is called a continuing guaranty." Of course, as between the mere heading and the specific provision, if there be any conflict, an interpretation made only from a reading of the document would be in favor of the specific provision. (*McNeely* v. *Claremont Management Co.*, 210 Cal.App.2d 749, 753 [27 Cal.Rptr. 87].) Apart from interpretation of the contract by reference to its terms only, however, we must consider whether the appellants, or any of them, were misled by the heading. Not one of them testified that he knew the definition given in section 2814 of the Civil Code, and by this, of course, we mean in substance and not in its exact form. Nothing in the testimony of appellants Patterson or Washington suggests that they were misled because of the words "continuing guaranty." Appellant Fort did testify that the continuing guaranty which he signed for the bank in San Jose was explained to cover future obligations (there were no existing ones at the time of the execution of the San Jose guaranty). But since Mr. Fort did not read the guaranty to the Oakland Bank of Commerce, he had no knowledge of its particular terms. If he had read it even to the part which created liability, and were able to testify that despite the specific terms his interpretation had been in favor of the meaning of the words "continuing guaranty," as he understood that meaning, perhaps a question of fact would have been presented which would be proper for decision by the jury. But under the facts we have a case wherein this appellant signed a contract without reading it. The rule that one is bound by such a contract unless the other party has misled him remains. (*Currin* v. *Currin*, 125 Cal.App.2d 644, 653 [271 P.2d 61]; *Smith* v. *Occidental etc. Steamship Co.*, 99 Cal. 462, 470-471

[34 P. 84]; *Nichols* v. *Hitchcock Motor Co.,* 22 Cal.App.2d 151, 153-154 [70 P.2d 654].)

The judgment against appellants Patterson, Washington and Fort is affirmed. The purported appeal of Goady is dismissed.

Rattigan, J., and Christian, J., concurred.

The petition of appellant Patterson for a hearing by the Supreme Court was denied June 17, 1970.