848 F.2d 1243
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 PLM, INC.; PLM Railcar Maintenance Company; PLM Financial
Services, Inc.; PLM Transportation Equipment Corporation;
PLM Investment Management, Inc.; PLM Securities, Inc.;
Mark G. Hungerford; Steven L. Pease; George Tedesco;
James Dawe; Herbert Montgomery, Plaintiffs-Appellants,
v.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a
capital stock company, Defendant-Appellee.
 No. 87-1590.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 12, 1987.
Decided May 31, 1988.
 Before SNEED, POOLE and BOOCHEVER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants (collectively "PLM") appeal from the District Court's grant of summary judgment in favor of defendant-appellee, National Union Fire Insurance Company ("National"), in an action alleging breach of director and officer liability insurance contracts, breach of the implied covenant of good faith and fair dealing, and violation of Sec. 790.03 of the Cal.Ins.Code. We affirm.
 
 I.
 
 3
 National issued director and officer liability insurance policies to two of the corporate appellants. The policies had separate insuring provisions for (1) director and officer liability ("D & O provision") and (2) corporate reimbursement ("reimbursement provision"). When five of PLM's directors and officers were named among the twelve defendants in a lawsuit brought by Pillsbury Company, National provided interim defense funding at the rate of 5/12 of the total defense costs. The corporate appellants, who were also named defendants, eventually negotiated a $1.75 million settlement with Pillsbury, without the participation or approval of National. Tax considerations dictated the form of the settlement, which contemplated merger of two of the corporate appellants. PLM, Inc. made an immediate payment of $250,000 and issued a promissory note for $1.5 million. The note was guaranteed by the individual directors and officers, but no obligations arose under the guarantees because the note was eventually paid by one of the other corporate appellants.
 
 
 4
 PLM informed National of the contemplated settlement in a letter mailed to National's office in New York, from California, 15 days before the settlement was consummated. The letter stated that a settlement demand had been made, gave the amount of the demand, stated that a counteroffer was being formulated, and sought National's agreement to contribute. Having received no response, PLM sent a telegram and another letter to National during the week prior to the August 30 settlement. The telegram stated that PLM would proceed under the assumption that National did not object to contributing 5/12 of the settlement payment. At no time during this period did PLM refer to a settlement deadline, disclose the agreed upon settlement amount, or attempt to contact National by telephone. On September 13, National's counsel, unaware that a settlement agreement had been reached, informed PLM by telegram that National did not agree to contribute to the settlement on the proposed basis. PLM filed this action 10 days later.
 
 II.
 
 5
 We review a grant of summary judgment de novo and will uphold it if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir.1986).
 
 III.
 
 6
 PLM contends that the district court erred in finding that the insureds did not suffer a covered loss. In the reimbursement provision of the policies "loss" was defined as "any amount the Company shall be required or permitted by law to pay to a Director or Officer as indemnity for a claim ... which payment by the Company may be required or permitted according to the applicable law...." In order to recover under this provision, PLM had to comply with Cal.Corp.Code Sec. 317 which requires that indemnification be authorized by (1) majority vote of disinterested directors, or (2) majority vote of disinterested shareholders, or (3) court order. It is undisputed that PLM did not meet any of these requirements. The District Court correctly found that the settlement payments were not a covered loss under the reimbursement provision.
 
 
 7
 In the D & O provision of the policies loss was defined as "any amount which the [Directors and Officers] are legally obligated to pay for a claim ... made against them for wrongful acts...." PLM contends that the guarantees obligated the directors and officers to pay, even though the condition precedent to payment--default by the corporations--never occurred. The cases cited by PLM to support this proposition, Oakland Bank of Commerce v. Wash., 6 Cal.App.3d 793, 799 (1970) and Palm Springs S. & S., Inc. v. Bering, 213 Cal.App.2d 177, 181 (1963), are inapposite. In neither case did the court address the question whether a guarantor is legally obligated to pay if the guarantee is extinguished prior to occurrence of the condition precedent for payment. We think it clear that in this case execution of the guarantees created only a contingent obligation on the part of the directors and officers. It was not an obligation to pay, and it never became an obligation to pay. Hence, there was no loss as defined by the D & O provision.
 
 
 8
 PLM claims that the words "legally obligated to pay" include situations in which a payment is made by third persons on behalf of a director or officer. Since the payments made by the corporate appellants eliminated potential liability of all defendants in the Pillsbury lawsuit, a portion of the payments arguably was made on behalf of the directors and officers. Nonetheless, PLM's argument fails because potential liability is not equivalent to a legal obligation to pay. The directors and officers were not legally obligated to make payments to Pillsbury and therefore the payments made on their behalf were not recoverable under the D & O provision.
 
 IV.
 
 9
 The district court did not err in not finding as a matter of law that National was estopped from asserting that there was no loss as defined by the policies, or that there existed genuine issues of fact material to the estoppel claim. The elements of estoppel are: the party to be estopped (1) knew the true facts, and (2) intended that his conduct be acted upon, or acted in such a manner that the party asserting estoppel could reasonably believe that the party to be estopped intended his conduct to be acted upon; the party asserting estoppel was (3) ignorant of the true facts, and (4) relied, to his detriment, on the conduct of the party to be estopped. Driscoll v. Los Angeles, 67 C.2d 297, 305 (1967).
 
 
 10
 We need not decide whether the first three elements were met, because we find that PLM failed to raise any genuine issues of fact concerning its reliance on National's delay in voicing its specific objections to the proposed settlement contribution. PLM acknowledged that it considered the terms of the settlement offer attractive and was prepared to accept the offer even if National did not contribute. It suggests, however, that had it known the precise grounds on which National would ultimately deny coverage, it could have taken steps to transform the settlement payments into a loss which would have been covered by the policies.
 
 
 11
 First PLM suggests it could have structured the settlement so that the directors and officers were required to make part of the payments. But Pease's deposition reveals that the tax aspects of the arrangement made the settlement attractive and were what motivated the structuring of the agreement so that the corporations, rather than the individuals, undertook the entire settlement obligation. No evidence shows either that these tax benefits would have been preserved had the individuals made the payments or that PLM would have sacrificed the tax benefits in order to recover some portion of the settlement under the insurance policies. Consequently, PLM has failed to carry its burden of showing reliance on National's silence in structuring the agreement.
 
 
 12
 Next PLM suggests that it could have complied with Cal.Corp.Code Sec. 317, had National notified it earlier that it was necessary to do so. However, a letter by PLM's counsel on October 4, 1984, implicitly acknowledged that PLM would have to comply with Sec. 317 following final adjudication of the Pillsbury action if it wished to collect under the reimbursement provision of the policies. PLM thus was not induced to believe that compliance was unnecessary.
 
 
 13
 Nor does the record show that as a result of National's silence the corporations forbore the possibility of creating a covered loss by suing the individual directors and officers for part of the settlement. See Nat'l Union Fire Ins. Co. v. Continental Illinois Corp., 666 F.Supp. 1180 (N.D.Ill.1987). The telegram sent by National less than two weeks after the settlement was completed informed PLM that nothing in the policies "would indicate that a 5/12 allocation is remotely relevant to the involvement of the directors and officers." This statement should have put the corporations on notice that some action was required. Thus there is no basis upon which to infer reliance from the mere fact that the corporations did not seek recovery from the individuals.
 
 
 14
 PLM's suggestion that the corporate appellants could have claimed under the D & O provision as subrogees of the directors and officers, pursuant to Atlantic Permanent Federal Savings & Loan Ass'n v. Am. Casualty Co., 670 F.Supp. 168 (E.D.Va.1986), is incorrect. As subrogees, the corporations could have asserted only those claims which the individuals could have asserted in their own right. Id. at 171. Since the directors and officers were not legally obligated to make the settlement payments, neither they nor their subrogees could have collected under the D & O provision. In Atlantic the officers had entered into a settlement agreement themselves and therefore had a right to proceed against the insurer for the settlement costs they incurred. Id. at 171.
 
 V.
 
 15
 PLM's final claim against National was for breach of the duties summarized by the California Supreme Court in Frommoethelydo v. Fire Ins. Exch., 42 Cal.3d 208, 214-15 (1986). PLM contends that National breached the implied covenant of good faith and fair dealing by failing to communicate with PLM and failing to assist in settling the Pillsbury action, and that it breached its fiduciary duty by failing to pass on information which PLM needed in order to obtain benefits under the policies. PLM further contends that National violated Cal.Ins.Code Sec. 790.03 by failing to act promptly on communications with respect to the claim, by failing to affirm or deny coverage within a reasonable time after proof of loss, and by failing to promptly explain the basis for denying the claim.
 
 
 16
 Contrary to PLM's contention, the district court did not hold that either the absence of coverage or PLM's own bad faith barred the bad faith claims against National. We construe the holding to be that because of PLM's conduct, the duties which National allegedly breached actually never arose.
 
 
 17
 All of PLM's bad faith arguments fail. The facts are virtually undisputed, and the only valid inference which can be drawn from those facts is that National did not act in bad faith or breach its statutory or common law duties to PLM. National responded to PLM's communications about the Pillsbury suit and asked to be kept informed. PLM did not keep National informed about the progress of the suit, about the details of settlement discussions which were taking place, or about the terms of the proposed settlement and the negotiation timetable, even while making a demand for contribution. The district court did not err in granting summary judgment on the bad faith claims.
 
 
 18
 The judgment is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3