Filed 2/1/16  Frazee v. Niles CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| WILLIAM FRAZEE, | B258334 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC471520) |
| v. | |
| WILLIAM EDWARD NILES et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County. Robert L. Hess, Judge.  Reversed and remanded with directions.

SJS Counsel, Samuel J. Smith; Law Offices of Louis Benowitz, Louis Max Benowitz for Plaintiff and Appellant.

Kendall Brill & Kelly, Bert H. Deixler, Laura W. Brill, Randall Louis Jackson, Nicholas F. Daum for Defendants and Respondents.

_____

William Frazee appeals from the dismissal of his lawsuit after the trial court sustained defendants' demurrers to his second amended complaint without leave to amend.[1]  Frazee submits that his proposed fourth pleading is sufficient to survive demurrer.  After de novo review, we find that Frazee has adequately stated only one claim, for reimbursement of business expenses.  We reverse the dismissal as to that one claim, and no others.

## FACTS

### *The Second Amended Complaint*

In 1996, Frazee was hired by AMG as vice-president of commercial advertising, later becoming president of his department.  In 2005, AMG employee Carrie Zuzenak accused Frazee of a sexual harassment, first in a lawsuit, and later in an arbitration claim.  With Frazee's consent, the law firm of Proskauer Rose (Proskauer) represented AMG and Frazee jointly in the Zuzenak matter.

Frazee denies any misconduct and alleges that defendants "fabricated the sexual harassment issue."  Nevertheless, he agreed in 2008 to a reprimand, demotion and loss of bonuses as a result of the Zuzenak claim, in return for which AMG agreed to forego its right to terminate Frazee for cause.  Frazee continued to work for AMG.

In 2010, AMG employee Addie Hall accused Frazee of wrongdoing.  Proskauer represented AMG and Frazee in the ensuing arbitration.  Frazee denies any misconduct against Hall.  On October 14, 2010, he left AMG's employ.  AMG filed an arbitration claim against Frazee seeking indemnification for legal costs and settlement sums incurred by AMG arising from the claims of Frazee's coworkers.  Frazee claims that his signature on the arbitration agreement was forged.

---

[1]     Defendants are William Niles; Niloofar Shepherd; Stefan Sonnenfeld; Marcelo Gandola; Ascent Capital Group, Inc.; Ascent Media Group, LLC (AMG); Ascent Media Systems Integration, LLC; Ascent Media Property Holdings, LLC; Company 3, LLC; Deluxe Entertainment Services Group, Inc.; and Deluxe Media Company 3, LLC.

*Procedural History*

Frazee instituted suit against defendants on October 13, 2011. The complaint asserted 22 causes of action against defendants. Frazee did not oppose demurrers to the complaint, but filed a first amended complaint that closely resembled the original pleading. The trial court took the demurrers off calendar.

Defendants demurred to the first amended pleading. At the hearing in June 2012, the court stated, with respect to Frazee's fraud claims, "I can't tell from [the pleading] who made what representations, when, or in what context. You've got this lumping together." The court added, "Now if you're going to plead fraud against these various defendants, you have to address each defendant individually, indentify what they said, how they said it, and when they said it." The court noted that Frazee's claim for forgery is not cognizable, and he did not plead damages with respect to his claims for malpractice and breach of fiduciary duty. The court observed that Frazee's claims appeared to be time-barred, and there was an overall lack of factual specificity as to his other claims. The court sustained the demurrers and gave Frazee 15 days to amend his pleading.

Frazee filed a second amended complaint (SAC) in July 2012. On demurrer, defendants pointed out that the SAC is nearly identical to the first amended complaint, and did not remedy deficiencies as directed by the trial court.

Before a hearing was conducted on adequacy of the SAC, the trial court denied Frazee's second request to disqualify defense counsel. Frazee appealed. This Court affirmed, finding that Frazee's attempt to relitigate the disqualification issue was barred by res judicata. (*Frazee v. Niles* (Jan. 6, 2014, B242395) [nonpub. opn.].)

Following the appeal on the collateral attorney disqualification issue, defendants renewed their demurrers to the SAC. Frazee admitted that the SAC did not comply with the court's instructions. He voluntarily dismissed without prejudice eight out of 22 causes of action and asked for leave to amend, attaching to his request a proposed third amended complaint (TAC).

At a hearing in June 2014, the trial court reminded Frazee's counsel that in 2012, "I sustained a demurrer to the first amended complaint and told you that [the SAC] would

3

be your last opportunity." The court observed that a redlined comparison of the first amended complaint and the SAC "points out quite dramatically [ ] how little you did to address any of the issues," characterizing the SAC as a "bad faith pleading." The court added, "the first four causes of action, that is, the fraud claims, are insufficiently pleaded, and I don't see any reason not to sustain the demurrer without leave to amend. You've had three opportunities to plead these fraud claims."

After a lengthy discussion of the SAC's deficiencies, the trial court questioned plaintiff's counsel about the TAC. It sustained demurrers to the SAC without leave to amend because "there was virtually nothing of any substance done between the first amended complaint and the second amended complaint," and because the TAC "remains substantially defective."

## DISCUSSION

### 1. Denial of Leave to Amend

Frazee challenges the trial court's refusal to allow him to file the TAC, his fourth attempt to plead a cause of action. If a plaintiff was provided "ample opportunity to cure the defect" in three pleadings, the trial court "did not abuse its discretion in sustaining the third demurrer against [the fourth] pleading without leave to amend" without a sufficient showing that plaintiff can state a claim. (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 994-995.)

Leave to amend is "open on appeal" if there is a reasonable possibility that an amendment would cure the defects. (Code Civ. Proc., § 472c, subd. (a); *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The papers must spell out how an amendment can cure a defect or change the legal effect of the pleading. Leave to amend should not be granted if it would be an exercise in futility. (*Long v. Century Indemnity Co.* (2008) 163 Cal.App.4th 1460, 1467-1468.) One thing is clear: given the trial court's warnings about the inadequacy of plaintiff's first three pleadings, we will consider the TAC to be his best effort, and will not entertain the idea of a fifth pleading.

4

It is unfair that defendants should have to instruct plaintiff how to plead, at their expense, in repeated demurrers and this appeal.

## 2. Claims Made in the TAC[2]

Frazee alleges that he entered a six-year oral employment contract with AMG on April 24, 2008, for $300,000 per year, plus "back-end opportunities" and bonuses, among other things. AMG breached the oral agreement in March 2009 by failing to provide Frazee with bonuses, a share of gross revenue or back-end opportunities, and by otherwise reducing his compensation; AMG also limited Frazee's managerial authority and denied him access to financial books and records.

After Frazee reached the oral agreement with AMG, AMG's in-house counsel Niles was charged with "memorializing" it. The result was a July 2008 written employment agreement. Frazee signed the agreement, which contains performance incentive provisions, but was "artfully drafted," giving AMG the right to terminate Frazee's employment. Defendants fabricated claims of sexual harassment and asserted that there was cause to punish Frazee.

### a. *Breach of Oral Agreement*

The statute of limitations for breach of an oral contract is two years. (Code Civ. Proc., § 339(1).) Frazee commenced this action on October 13, 2011, more than two years after defendants allegedly breached the contract in March 2009. The TAC states that Frazee did not discover the breach of contract until October 2010, a delay caused by his inability to know that the sexual harassment claims against him were false. His lack of knowledge caused him to consent to punitive measures with respect to his compensation, duties and conduct, and tolled the statute of limitations.

---

**2**     The TAC's 21 causes of action are redundant. Our discussion covers all claims, even if they are not individually listed. We take judicial notice of Frazee's July 2008 written employment contract. Because he claims a breach of that contract, and references it repeatedly, it should have been incorporated into the TAC.

Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that his injury was caused by someone's wrongdoing; it does not require awareness of the specific facts: "So long as a suspicion exists, it is clear that the plaintiff must go find the facts [and] cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111; *Apple Valley Unified School Dist. v. Vavrinek, Trine, Day & Co.* (2002) 98 Cal.App.4th 934, 943.) In this case, the truth or falsity of the sexual harassment claims made against Frazee is uniquely within Frazee's knowledge. If Frazee did not, in fact, harass coworkers, he had a duty to pursue his suspicions that AMG falsely accused him of harassment in 2008. Frazee's claim accrued when AMG denied him contractual benefits in 2009, and was not delayed by his purported inability to know that he was falsely accused of harassment.[3]

Apart from being time-barred, the 2008 oral employment contract was superseded by an integrated 2008 written employment contract. There cannot be a verbal contract and an express written contract embracing the same subject, but requiring different results. (*Starzynski v. Capital Public Radio, Inc.* (2001) 88 Cal.App.4th 33, 37-38.)

### b. *Alleged Fraud in the July 2008 Written Employment Contract*

Frazee claims that he was defrauded because the July 2008 agreement "did not contain the full panoply of terms agreed to by [AMG's] CEO in the April 2008 Oral Agreement." The law "presumes that everyone who signs a contract has read it thoroughly," and its terms cannot be avoided with a claim that a signatory failed to read it; it is also presumed that the parties understood the agreement, particularly when they are sophisticated. (*Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87, 93.)[4]

An employee cannot rely on oral promises that are contradicted by the express terms of a written employment agreement. (*Slivinsky v. Watkins-Johnson Co.* (1990) 221

---

[3]    Though Frazee claims in his appellate brief that the statute of limitations was tolled by AMG's initiation of arbitration proceedings, he did not allege this in the TAC.

[4]    None of Frazee's four pleadings allege that he failed to read the written agreement. Frazee has decades of managerial experience, indicating sophistication.

Cal.App.3d 799, 807.) The July 2008 contract "sets forth the entire agreement between the parties . . . and supersedes any and all prior agreements or understanding . . . whether written or oral . . . ." Frazee's fraud claim arises from his unawareness that the written agreement was at odds with oral promises. As such, it fails as a matter of law. (*Dore v. Arnold Worldwide, Inc.* (2006) 39 Cal.4th 384, 393-394.)

Frazee's duty to read the written contract is not extinguished by the allegation that in-house counsel Niles "purported to act as Plaintiff's attorney in connection with Plaintiff's new employment agreement." Frazee's subjective belief that corporate counsel was working for Frazee in negotiating a contract on behalf of the corporation does not establish the existence of an attorney-client relationship. The attorney for a corporation represents it, its stockholders and its officers in their corporate roles, but does not represent employees personally. (*Meehan v. Hopps* (1956) 144 Cal.App.2d 284, 290.) "[A] plaintiff cannot unilaterally establish an attorney-client relationship, and [his] hindsight 'beliefs' that such a relationship existed are thus legally irrelevant." (*Zenith Ins. Co. v. O'Connor* (2007) 148 Cal.App.4th 998, 1010.) Nothing in the TAC reveals Niles's "purported" actions that would lead an experienced executive like Frazee to believe that corporate counsel personally represented him during negotiations over his employment contract: in fact, they were on opposite sides of the bargaining table.

## c. *Rescission*

The TAC alleges that Frazee's written 2008 employment contracts are subject to rescission because Frazee consented to the contracts owing to duress, fraud, or undue influence.[5] In-house counsel Niles supposedly held himself out as an attorney acting on Frazee's behalf, but did not comply with rules of professional conduct requiring an attorney who engages in joint representation to advise the parties of conflicts of interest. As discussed in the preceding section, no facts support the notion that corporate counsel

---

[5]    The TAC refers to a December 2008 amendment to Frazee's contract, but (like the July 2008 contract) it is not incorporated by reference into the pleading.

concurrently represented Frazee: AMG's interests were not congruent with Frazee's interests in bargaining over employment terms.

Both the grounds for and means of rescinding a contract are governed by statute. (*Estate of Wong* (2012) 207 Cal.App.4th 366, 383.) A party may rescind if his consent was obtained through duress, menace, fraud or undue influence. (Civ. Code, § 1689, subd. (b)(1).) The rescinding party must (a) give notice of rescission to the other party, and (b) "[r]estore to the other party everything of value which he has received [ ] under the contract." (Civ. Code, § 1691.)

Frazee does not allege that he followed the steps necessary to rescind the 2008 written agreement. He did not give notice of rescission or restore to AMG all the money he received under the contract. Given that Frazee's base pay under the 2008 contract was $300,000, he is required to return a substantial sum. Frazee does not allege willingness to return his pay to AMG. As a result, he cannot rescind the contract.

### d. *Quantum Meruit*

The TAC states that Frazee seeks recovery in quantum meruit "in the event the April 2008 Agreement or July 2008 Agreement are deemed unenforceable." As discussed in the preceding sections, the April oral agreement was supplanted by the integrated July 2008 written agreement, which was not obtained by fraud or rescinded.

An implied-in-law promise to pay reasonable value cannot coexist with an express compensation agreement. (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1419.) Frazee's July 2008 employment contract discusses his compensation in detail. "[E]quitable entitlement to a quantum meruit payment is not implied where the parties have actual contract terms covering payment." (*Id.* at p. 1420.) In light of his written contract, Frazee cannot recover in quantum meruit.

### e. *Fraud and Misrepresentation Claims Regarding the December 2008 Reprimand*

The TAC alleges that in December 2008, five corporate defendants, through Niles, represented that it was necessary to reprimand Frazee due to his inappropriate conduct with numerous AMG coworkers. Though AMG felt that it had cause to terminate Frazee,

8

it waived its right to do so in exchange for Frazee's acceptance of a demotion. In a "Final Written Warning" delivered to Frazee, AMG wrote that it completed an investigation, which showed that he violated corporate antiharassment policies by commenting upon and referring to a female employee's physical anatomy; making employees uncomfortable by excessively hugging them; and referring to coworkers as "baby," "love," "sweetie," and "honey."

Frazee alleges that his coworkers' harassment claims "did not exist," but were fabricated by defendants to deceive him into allowing AMG to diminish his pay. He did not commit any sexual or inappropriate conduct, so there was no basis for the reprimand. In reliance upon defendants' false harassment claims, Frazee continued to work for AMG at reduced pay, instead of seeking other job opportunities, to his detriment.

Reliance is resolved on demurrer when plaintiff has "'his own information and intelligence'" that makes his reliance on representations "'preposterous and irrational.'" (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 865.) Frazee did not rely upon defendants' representations that they conducted an investigation and found him culpable of sexual harassment if, as he claims, he never harassed any coworkers. As a matter of law, Frazee was not induced to rely on representations about the results of an investigation because he knew, per his pleadings, that he never engaged in any type of sanctionable misconduct, even if defendants guarded the identities of the complainants. (*Carpenter v. Hamilton* (1936) 18 Cal.App.2d 69, 71 [a plaintiff "has not been defrauded unless he has been misled, and he has not been misled when he has acted with actual or imputed knowledge of the true facts"].) Further, the July 2008 written contract shows that AMG could, in its sole discretion, terminate Frazee's employment at any time, without cause, upon written notice. AMG had no need to fabricate a reason to terminate Frazee's employment.

   f. *Breach of Written Contract*

Frazee alleges that defendants breached the July 2008 written contract by failing to pay him incentive compensation through 2015, or provide him with budget figures to

9

determine his eligibility for a bonus; precluding him from supervising employees to maximize revenues; and constructively terminating his employment without good cause.

Employer and employee are free to agree to a contract terminable at will. (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 677.) The July 2008 contract allows for "termination of employment without cause," "at any time" and for any reason. A written contract that allows for termination at any time, without cause, in the employer's sole discretion, is at-will employment; a departure from at-will status occurs when an agreement states that the employee will be terminated only for good cause. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 335-336.) An employee who signs an at-will contract cannot claim constructive discharge on account of intolerable working conditions, stemming from the employer's alleged breach of the employment contract. (*Starzynski v. Capital Public Radio, Inc.*, *supra*, 88 Cal.App.4th at p. 41.)

Frazee voluntarily left his job with AMG. He cannot claim a wrongful discharge for intolerable working conditions after agreeing to the punitive measures imposed by his employer in 2008. A demotion, even when accompanied by a reduction in pay, does not constitute an intolerable working condition necessary to support a claim of constructive discharge. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1247.) Frazee did not perform under the contract after quitting in October 2010, barring his claims for compensation payable through 2015.

g. *Arbitration Agreement Fraud*

The TAC alleges that "defendants" (listing nine of them) falsely represented that they possessed the original of an arbitration agreement allegedly signed by Frazee. In fact, defendants only had a copy of a document bearing Frazee's signature, having destroyed the original. Defendants presented this document to Frazee and the arbitrator: Frazee relied on its authenticity and participated in an arbitration. At some point before June 13, 2011, plaintiff realized that his signature on the arbitration agreement was forged. He then filed this lawsuit.

The TAC does not allege with particularity which of the five corporate and four individual defendants made false representations to him. Nor does it allege justifiable

10

reliance: it states that the forged document "was presented to Plaintiff" in November 2010. The TAC offers no explanation why he did not immediately realize that (a) he never signed an arbitration agreement and (b) the signature was not his. Plaintiff was not deceived into forfeiting his right to sue defendants, as shown by his four pleadings and two appeals.

### h. *Legal Malpractice and Fiduciary Duty Claims*

The TAC asserts that in-house counsel Shepherd and Niles jointly represented AMG and Frazee in various legal matters concerning claims made against Frazee by his coworkers, serving as an "intermediary" or "liaison" between Frazee and the Proskauer law firm. They represented to Frazee, via written letters sent by attorneys at Proskauer, that representation would be at AMG's expense; that there was no conflict of interest; any risks to Frazee were fully disclosed; and if Frazee agreed to joint representation, he would be advised if a conflict arose. In-house counsel owed Frazee a fiduciary duty to act in his best interests. As it turned out, Frazee's representation was not intended to be solely at AMG's expense, which gave rise to a conflict between Frazee and AMG.

We take judicial notice of admissions in Frazee's lawsuit against Proskauer, alleging that the attorneys at that firm committed malpractice by jointly representing AMG and Frazee, without disclosing a conflict of interest. Proskauer, not AMG's in-house counsel, represented Frazee. Frazee consulted attorney Samuel Smith, to "properly advise Plaintiff regarding [Proskauer's] proposal to jointly represent Plaintiff and Ascent." Mr. Smith began an investigation of the conflict of interest on September 22, 2010. Frazee's retention of counsel shows that he suspected a conflict of interest with AMG.

Frazee's claims accrued no later than September 2010, when inquiry notice led him to consult with independent counsel. The statute of limitations for malpractice and breach of fiduciary is one year from the time plaintiff discovers, or through reasonable diligence should have discovered, facts constituting a wrongful act or omission. (Code Civ. Proc., § 340.6.) The TAC admits that Frazee's reasonable discovery of the conflict of interest arose when he retained independent counsel. What the TAC does not admit is

11

that independent counsel was retained and took action regarding the conflict of interest in September 2010. Frazee's complaint filed in October 2011 was untimely. The claim was not equitably tolled during the arbitration commenced by AMG in November 2010. (*Gordon v. Law Offices of Aguirre & Meyer* (1999) 70 Cal.App.4th 972, 979-980; *Laird v. Blacker* (1992) 2 Cal.4th 606, 618.)

### i. *Defamation*

The TAC alleges that the individual defendants published disparaging oral statements about Frazee to each other (and a human resources manager) on October 7, 2010. The defamatory statements were that Frazee should be reprimanded for "'carelessness,'" "'failure to follow instructions'" and "'violation[s] of Company Policies or Procedures,'" all arising from AMG's investigation of coworkers' complaints about Frazee's sexually harassing misconduct, which harmed AMG's reputation, set a poor example for employees, made AMG vulnerable to litigation, and cost it millions of dollars. These accusations injured Frazee's professional and personal reputation.

The allegedly false statements were published on October 7, 2010, the lawsuit was filed on October 13, 2011, and the statute of limitations is one year. (Code Civ. Proc., § 340, subd. (c).) Frazee does not deny awareness of the allegedly defamatory memorandum on October 7, 2010. Instead, he notes that the lapse is de minimis, "only six days."

An employer enjoys a privilege to communicate with persons who have a common interest in the subject matter of the communication. (Civ. Code, § 47, subd. (c).) An employer's discussion of sexual harassment claims made by some employees against another employee in the organization is presumptively privileged, owing to the employer's duty to investigate the complaints. (*Bierbower v. FHP, Inc.* (1999) 70 Cal.App.4th 1, 3.) "To hold an employer liable for defamation because one employee must pass on a defamatory allegation of sexual harassment to another for investigation flies in the face of all sexual harassment law." (*Id.* at p. 7.) To protect civil rights, employers are "required to establish affirmative programs which include prompt and remedial internal procedures and monitoring so that worksites will be maintained free

12

from prohibited harassment." (Historical and Statutory Notes, 32E pt. 2 West's Ann. Gov. Code (2011 ed.) foll. § 12940, p. 198.)

An investigative memorandum about sexual harassment claims between corporate executives, in-house counsel and a human resources manager is presumptively privileged. To avoid the privilege, the pleading must contain affirmative allegations of malice showing that the speaker entertained hatred or ill will going beyond what is necessary for the communication. (*Smith v. Hatch* (1969) 271 Cal.App.2d 39, 47-48.) The TAC alleges that "these false accusations were published to cause, and then justify, Plaintiff's wrongful discharge." As noted in preceding sections, Frazee could be fired without cause, at any time and for any reason, nullifying a need to fabricate sexual harassment claims. Far from showing malicious or hateful behavior, the TAC suggests that AMG made every effort to keep Frazee in its employ, despite years of harassment claims against him by coworkers. The TAC does not allege malice in a way that overcomes the common interest communication privilege.

### j. *Unfair Competition*

Unfair Competition Law recovery is limited to restitution and injunctive relief. (Bus. & Prof. Code, § 17203; *Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440, 452.) Frazee voluntarily quit his employment because he was demoted and had a pay cut, which are not grounds to claim intolerable working conditions or constructive discharge. (*Turner v. Anheuser-Busch, Inc.*, *supra*, 7 Cal.4th at p. 1247.) There was no unfair, unlawful or fraudulent business practice. Once Frazee quit, he was no longer entitled to be paid, so there is no basis for a restitution claim. There is also no basis for an accounting of bonuses or sales incentives that he agreed to forfeit in 2008.

### k. *Termination in Violation of Public Policy*

The TAC alleges that in-house counsel Niles and Shepherd violated the rules of professional conduct governing attorneys, which made Frazee's working conditions intolerable and gave him no reasonable alternative but to resign. "[T]here is no law we know of to support the notion that anyone other than the employer can discharge an employee." (*Weinbaum v. Goldfarb, Whitman & Cohen* (1996) 46 Cal.App.4th 1310,

1315; *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900-901.) The employer in this case, AMG, is not a law firm, and is not bound by the rules of professional conduct. Frazee cannot state a claim against his employer for violating rules that do not apply to the employer.

### l. *Labor Code Violation*

The TAC alleges that Frazee is entitled to recover unreimbursed expenditures of $22,000 for entertaining clients; the cost of an insurance policy to cover harassment claims made against him; and attorney fees he incurred. An employer must indemnify an employee "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." (Lab. Code, § 2802, subd. (a); *Cochran v. Schwan's Home Service, Inc.* (2014) 228 Cal.App.4th 1137, 1143-1144.)

Engaging in harassment in the workplace is not a "necessary" part of discharging one's employment duties; on the contrary, it is a direct violation of state law. (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1006-1009.) If Frazee obtained private insurance to cover his workplace misdeeds, that expenditure cannot be charged to his employer. In any event, the cost of litigation and settlement with Frazee's coworkers was borne by AMG, not by Frazee.

That leaves one claim: the repayment of expenses incurred by Frazee to entertain clients. Defendants do not dispute this responsibility. Frazee may go forward with his claim for indemnification of business-related entertainment expenses.

14

# DISPOSITION

The order of dismissal is reversed. The case is remanded with directions to the trial court to allow Frazee to file a third amended complaint alleging a single cause of action for indemnification of business expenses pursuant to Labor Code section 2802. In the interests of justice, the parties are to bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

15