ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Plaintiff,

v.

ADVANCED INTERVENTIONAL
SYSTEMS, INC., Defendant.

Civ. No. 92–1634–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

June 22, 1993.

584

Daniel W. Cotter, Fairfax, VA, and Bethany K. Culp and Jeffrey J. Bouslog, Oppenheimer Wolff & Donnelly, Saint Paul, MN, for plaintiff.

Liam O'Grady, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, and David A. Gauntlett, Callahan & Gauntlett, Irvine, CA, for defendant.

### MEMORANDUM OPINION

ELLIS, District Judge.

In this declaratory judgment action concerning coverage of a general liability insurance policy, the question presented is whether, under California law, patent infringement and inducement to infringe constitute "advertising injury" within the meaning of the policy. For the reasons that follow, the Court concludes that they do not.

### I.

Plaintiff, St. Paul Fire and Marine Insurance Company ("St. Paul"), seeks a declaration concerning its duty to defend and/or indemnify its insured, the defendant Advanced Interventional Systems, Inc. ("AIS"), with respect to a patent infringement claim brought against AIS by Pillco Limited Partnership ("Pillco"). On May 11, 1992, Pillco filed a complaint against AIS claiming that a laser angioplasty device manufactured by AIS infringed on certain patents held by Pillco and that AIS had induced patent infringement by causing others to use the de-

vices. The jury found in favor of Pillco, and AIS appealed. The dispute was settled prior to resolution of the appeal. St. Paul refused to defend or indemnify AIS in the action, taking the position that claims for patent infringement and inducement to infringe the patents were not covered by the St. Paul commercial general liability policy purchased by AIS. The matter is before the Court on cross-motions for summary judgment.

### II.

The threshold issue is the choice of governing law. Because this is a diversity dispute, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), requires the application of Virginia's choice of law rules, which, in the circumstances, require application of California substantive law, because the insurance policy at issue was negotiated, paid for and issued exclusively in California. *See Woodson v. Celina Mut. Ins. Co.*, 211 Va. 423, 177 S.E.2d 610 (1970) (interpretation of contracts governed by the law of the place where the contract was made, absent an express intention of the parties to the contrary).

The St. Paul insurance policy provides coverage for "advertising injury" or "personal injury." AIS contends that both categories of injury, as defined by the policy, are applicable in the instant case.

### A.

"Advertising injury" is defined by the general liability insurance policy as:

Injury caused by any of the following offenses that result from the advertising of your products or work:

- libel or slander
- written or spoken material made public which belittles the products or work of others
- written or spoken material made public which violates an individual's right of privacy
- unauthorized taking of advertising ideas or style of doing business
- infringement of copyright, title or slogan

■ By its plain terms, this definition is not met unless there first exists one of the five predicate offenses, namely (1) libel or slander, (2) product belittlement, (3) violation of individual privacy, (4) unauthorized taking of advertising or style of doing business, or (5) infringement of copyright, title or slogan. If one of these predicate offenses exists, then a second condition must be found to exist, namely the injury caused by the predicate offense must result from advertising. Of course, if no predicate offense exists, then the inquiry ends; there can be no advertising injury. That is precisely the result here because Pillco's patent infringement and inducement to infringe claims do not involve any predicate offense.

Seeking to avoid this result, AIS argues that, under California law, the duty to defend may be premised on claims not expressly included in the complaint. *See Horace Mann Ins. Co. v. Barbara B.*, 4 Cal.4th 1076, 1084, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993) ("Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy."). Thus, AIS contends that although none of the five predicate offenses were advanced in the complaint, Pillco could have brought its direct patent infringement claim as a state common law claim for "unauthorized taking of ... [a] style of doing business," and, therefore, that coverage exists for all claims based on this set of predicate facts.

■ This argument is meritless. Even if, for some inexplicable reason, Pillco had pre-ferred to bring a common law action for "unauthorized taking of a style of doing business," when the operative facts clearly suggested an action for patent infringement, Pillco could not have done so. The facts simply do not give rise to a tort for unlawful taking of "style of doing business." The term "style of doing business," as it appears in the insurance policy, has been used by the courts to refer to a company's comprehensive manner of operating its business.[1] "Style of doing business" expresses essentially the same concept as the more widely used term: "trade dress." *See, e.g., Prufrock Ltd. v. Lasater*, 781 F.2d 129 (8th Cir.1986).[2] In the underlying claim in this case, there was no allegation that AIS appropriated any element of Pillco's "style of doing business" other than the patents involved in the manufacture of the laser angioplasty device. Patent infringement involving only the patents used in the manufacture of a single device does not even approach the showing of pervasive similarity in the overall manner of doing business that courts have previously recognized as necessary to successfully prove misappropriation of a "style of doing business." More importantly, even if Pillco had attempted to denominate its patent infringement claim as a state common law claim, the action would have been dismissed as preempted by federal patent law. *See Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231, 84 S.Ct. 784, 789, 11 L.Ed.2d 661 (1964) ("Just as a State cannot encroach upon the federal patent laws directly, it cannot, under some other law ... give protection of a kind that clashes with the objectives of the federal patent laws.").[3]

1. *See Shakey's, Inc. v. Martin*, 91 Idaho 758, 430 P.2d 504 (1967) (protection of restaurant franchisor's financial interest in the overall business style, including such things as a type of furniture, a certain physical setup, an exposed cooking area, a type of music and a limited menu); *Medd v. Boyd Wagner, Inc.*, 132 F.Supp. 399 (N.D.Ohio 1955) (protection of restaurant franchisor's "uniform plan of retailing [an] ice milk product in prototype buildings that are distinctive from other stores dealing in similar products").

2. In *Prufrock*, the Eighth Circuit held that a broadly-defined "style of doing business," (in that case, "country cooking") was not an interest capable of protection. The court went on to address whether a more narrowly defined category, similar in scope to that identified as "style of doing business" by the *Shakey's* and *Medd* courts, was capable of protection as "trade dress" under section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a).

3. The Supreme Court has recently acknowledged that, notwithstanding the holding of *Sears*, the states retain the discretion to regulate misappropriation of trade dress to the extent that such regulation does not interfere with the federal patent laws. *See Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 146–57, 109 S.Ct. 971, 975–80, 103 L.Ed.2d 118 (1989). Clearly, a trade dress or "style of doing business" action, based exclusively on the alleged misappropriation of a patented idea, would so plainly implicate federal patents law that it would necessarily be preempted under *Sears*.

Thus, even granting AIS the benefit of the doctrine of California law that the language of an insurance policy is construed against the insurer, *Horace Mann*, 4 Cal.4th at 1084, 17 Cal.Rptr.2d 210, 846 P.2d 792, AIS's argument in favor of coverage for the direct infringement claim must be rejected. Pillco's direct infringement claim was not an offense enumerated under the policy. And it is nonsense to suppose that if the parties had intended the insurance policy in question to cover patent infringement claims, the policy would explicitly cover infringements of "copyright, title or slogan," but then include patent infringement, *sub silentio*, in a different provision, by reference to "unauthorized taking of ... [the] style of doing business." Because the facts supporting Pillco's direct infringement claim created no potential liability for any cause of action enumerated under the policy, Pillco's direct infringement claim created no duty on the part of St. Paul to defend or indemnify AIS.[4]

■ AIS's contention that it was owed a duty to defend on the direct infringement claim fails for the independent reason that AIS's injury was not caused by an "offense that result[ed] from the advertising of [AIS] products or work." AIS attempts to argue that the advertising of the infringing device was a "but for" cause of the sale of the device, and therefore that the infringement "resulted from" the advertising of AIS's product. The Supreme Court of California, however, has recently rejected the theory underlying this argument. In *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1274, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992), the court held that, under the language of a similarly worded insurance policy, there is no coverage unless the insured shows "a causal connection between 'advertising activities' and 'advertising injury.'" In other words, by inclusion of coverage for "advertising injury," it does not follow that "any harmful act, if it were advertised in some way, would fall under the grant of coverage merely because it was advertised." *Id.* at 1275, 10 Cal. Rptr.2d 538, 833 P.2d 545. In explaining this concept, the *Bank of the West* court used patent infringement as an example. The court favorably cited decisions holding that patent infringement does not fall within the scope of "advertising injury," "even though the insured advertises the infringing product, if the claim of infringement is based on the sale or importation of the product rather than its advertisement." *Id.*, citing *National Union Fire Ins. Co. v. Siliconix Inc.*, 729 F.Supp. 77, 80 (N.D.Cal.1989) (contrary interpretation would "extend[ ] advertising injury coverage far beyond the reasonable expectations of the insured").[5] As a result, Pillco's direct infringement claim does not fall within the policy's coverage merely because the infringing device may have been advertised by AIS. Thus, Pillco's direct patent infringement claim against AIS meets neither of the prerequisites for coverage under the advertising injury clause.[6]

4. Apart from the contention that the patent infringement claim could also have been brought as a claim for unlawful taking of "style of doing business," AIS makes several, progressively more tenuous arguments that the infringement claim could have been pled to fit within the enumerated offenses in the "advertising injury" definition. For example, AIS contends that patent infringement could have been pled as "product disparagement," since the marketing of the AIS product "necessarily" implied that Pillco's patent was somehow not legitimate. Without considering whether the terms of the policy could be read to support the tortuous interpretations urged by AIS, the Court notes that these arguments ultimately suffer from the same defect as does the "style of doing business" argument: namely, no state common law action, however denominated, can survive preemption by the federal patent laws when, as here, the gravamen of the complaint is based on infringement of a patent.

5. In both *Bank of the West* and *Siliconix*, the relevant policy language provided for coverage for injuries that arose "out of an offense ... occurring in the course of the named insured's advertising activities." The present policy requires that the injury be "caused by ... offenses that result from the advertising" of the insured's product. While the language in the instant case is marginally more amenable to the interpretation urged by the plaintiffs, the Court is not convinced that the small variation in the wording of the respective policies dictates a different result.

6. AIS has requested this Court to take judicial notice of several documents, including several unpublished decisions from California federal and state courts which AIS contends are supportive of its argument. By separate Order, the Court has granted the motion to take judicial notice of these documents, but the Court finds all

Pillco's second claim, that AIS induced others to infringe Pillco's patents by advertising its infringing product, is also outside the coverage of the insurance policy. This claim does clear one of the hurdles, because any successful claim premised on this theory would certainly "result from" the advertising of AIS's products. Nevertheless, as with the direct infringement claim, AIS cannot clear the predicate offense hurdle. Specifically, nothing in the facts alleged would permit AIS to plead any of the five predicate offenses enumerated in the policy in lieu of or alternatively to the inducement claim. As a consequence, the inducement to infringe claim triggers no duty to defend or indemnify under the policy.

### B.

■ AIS also contends that the circumstances here warrant coverage under the policy's "personal injury" provision. The "personal injury" definition states, in relevant part, that the policy covers "injury, other than bodily injury[,] caused by any one of the following offenses that result from your business activities, other than an advertising, broadcasting, publishing or telecasting done by or for you: . . . written or spoken material made public which belittles the product or work of others." AIS's argument for coverage mirrors its argument, made in the context of "advertising injury," to the effect that Pillco could have brought a common law action, alternatively to the patent claim actually pled in the complaint, that the marketing of the AIS product "disparaged" the legitimacy of Pillco's patent. This argument is frivolous. As shown above, any such claim would stand no chance of imposing liability, even disregarding the dubious legal underpinnings of the claim, because the cause of action

would plainly be preempted by the federal patent laws. As a consequence, neither the direct infringement claim nor the inducement claim fall within the coverage defined by the policy's personal injury provision.

### III.

In sum, the parties in this dispute bargained and contracted for insurance coverage for "advertising injury" and "personal injury." Nothing in the policy either invites the inference or permits the conclusion that the parties contemplated that patent infringement or inducement of patent infringement would fall within the scope of either term. Moreover, the actions for which AIS was sued could not have formed the basis for any cause of action included within the coverage of the policy. As a result, St. Paul had no duty under the policy to defend or indemnify AIS with respect to a claim for patent infringement or inducement of patent infringement. St. Paul is accordingly entitled to, and hereby **GRANTED,** declaratory judgment to that effect.

---

of the submitted decisions either distinguishable from the instant case or unpersuasive. The majority of the cases relied upon by AIS involve policy language that includes amongst the predicate offenses "unfair competition" or "piracy." *See, e.g., Aqua Queen Mfg., Inc. v. Charter Oak Fire Insurance,* 26 U.S.P.Q.2d 1940 (C.D.Cal.1993); *Aetna Casualty and Surety Co. v. Watercloud Bed Co.,* 1988 WL 252578, 1988 U.S.Dist. LEXIS 17572 (C.D.Cal. November 17, 1988); *Omnitel v. Chubb Group of Ins. Companies,* Case No. H–151014–0 (Alameda Co. Superior Ct. April 9, 1993). The fact

that these cases have found coverage for patent infringement under the policies in question is irrelevant to the present dispute because "unfair competition" and "piracy" are not predicate offenses under the language of the St. Paul policy. The one California decision that has found that patent infringement should be included under a misappropriation of "style of doing business" clause, *Atlantic Mutual Ins. Co. v. L.A. Gear, Inc.,* Case No. 3 C 3042 (Los Angeles Superior Ct. November 2, 1991), is entirely devoid of any legal reasoning, and this Court is confident that a similar decision would not be reached by the Supreme Court of California.