**OWENS–BROCKWAY GLASS CONTAINER, INC.,**
Plaintiff,

v.

**INTERNATIONAL INSURANCE COMPANY, et al.,**
Defendants.

Civ. No. S–91–1044–DFL–GGH.

United States District Court, E.D. California.

March 13, 1995.

Marvin D. Morgenstein, Morgenstein & Jubelirer, David B. Goodwin, Heller, Ehrman, White & McAuliffe, San Francisco, CA, for plaintiff.

Brian R. Potiker, Charles Lynberg, Lynberg & Watkins, Los Angeles, CA for AIU Ins. Co. and Nat. Union Fire Ins. Co.

Robert M. Anspach, Law Offices of Robert M. Anspach, Toledo, OH, for Intern. Ins.

Raoul D. Kennedy, Crosby, Heafey, Roach & May, Oakland, CA, for Hartford Acc. and Indem. Co. and Hartford Cas. and Ins. Co.

## MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

Plaintiff Owens–Brockway Glass Container, Inc. ("Owens") seeks insurance coverage for its $22.5 million patent infringement settlement. The key question is whether the "advertising injury" provisions of defendants' policies are capacious enough to include room for patent infringement.

### I

#### A. The Underlying Litigation

In September 1988, B & H Manufacturing Co. ("B & H") filed suit for patent infringement against plaintiff Owens in the United States District Court for the Northern District of Georgia. B & H's amended complaint sought "damages" and injunctive relief for Owens' infringement of B & H's two patents on its "wrap-shrink" bottle-labeling technology. After a trial, the jury found for B & H and awarded it $36,485,400. The verdict form indicated that this amount was intended as a "running royalty" for Owens' nonwillful infringement. The court entered judgment accordingly and enjoined Owens from further infringing B & H's patent.

On July 17, 1991, Owens and B & H negotiated a settlement. Under the terms of their agreement, Owens paid $22.5 million in satisfaction of the judgment against it for past royalties. B & H also granted Owens a non-exclusive license for future use of its patents and agreed not to enforce the injunction during the term of the license.

#### B. The Present Litigation

Owens sought insurance coverage for the $22.5 million payment under the "advertising injury" portion of policies issued by the defendant insurers. The insurers denied coverage and Owens filed suit in California state court seeking declaratory relief against the insurers. The case was removed to federal court under the court's diversity jurisdiction.

Owens originally sought coverage under two separate lines of insurance. The first line included a policy issued by Seaboard Surety Company ("Seaboard") and a similarly phrased excess liability provision found in "Coverage A" of Owens' policy with defendant International Insurance Co. ("International"). In December 1992, however, the parties stipulated to dismiss all claims against Seaboard and the Coverage A claims against International. The 1992 California Supreme Court decision in *Bank of the West* effectively precluded those claims.

Owens now proceeds solely under its second line of insurance arising from "Coverage B" of the International umbrella policy[1] and

---

1. International's Coverage B was an "umbrella" policy, while Coverage A was "excess" insurance. The primary difference between the two is that an umbrella policy can differ from the pri-

other policies which supplement the International policy. The other defendants are AIU Insurance Company, Columbia Casualty Company, Hartford Accident & Indemnity Company, Hartford Casualty & Insurance Company, National Union Fire Insurance Company, and Northfield Insurance Company.

On June 24, 1994 the court issued a stipulation and order, granting Owens leave to file a second amended complaint containing a new Seventeenth Cause of Action. In this new cause of action, plaintiff sought a declaratory judgment that the patent infringement damages fell within the scope of "Advertising injury" in the defendants' policies. Subsequently, Owens filed a motion for partial summary judgment on this cause of action. Defendants filed motions for summary judgment, or, alternatively, judgment on the pleadings.

Summary judgment is proper where no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). There are no significant disputed facts relevant to the motions before the court. Most importantly, plaintiff concedes that when B & H Manufacturing sued Owens for patent infringement, "B & H did not allege or potentially allege, seek to recover, or recover for any injury that was in any way related to advertising." Defendants have submitted a statement of six other undisputed facts sufficient to resolve the motion before the court, and plaintiff has accepted them as undisputed.

The parties agree that California law should be applied to the resolution of the summary judgment motions.

## II

Owens cannot obtain coverage unless the "advertising injury" portion of defendants' policies covers patent infringement damages. "Advertising injury" is defined in the applicable policies as follows:

1. Oral or written publication of material that slanders or libels a person or or-

ganization or disparages a person's or organization's goods, products or services;

2. Oral or written publication of material that violates a person's right of privacy;

3. *Misappropriation of* advertising ideas or *style of doing business;*

4. *Infringement of* copyright, *title* or slogan.

(Emphasis added). Owens contends that patent infringement is encompassed within the definition under either "infringement of ... title" or "misappropriation of ... style of doing business."

Before examining Owens' claim, it is helpful to consider the policy language here in comparison to language from other policies that have been interpreted recently, because the policies at issue in this case differ in two critical respects. First, the definition of "advertising injury" in the policies here does not include language defining advertising injury as an occurrence "in the course of" or "arising out of" the insured's advertising activities. In *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992), the California Supreme Court held that because of this language " 'advertising injury' must have a causal connection with the insured's 'advertising activities' before there can be coverage." *Id.,* 10 Cal. Rptr.2d at 553, 833 P.2d at 546. Following the *Bank of the West* decision several courts have held that patent infringement is not covered as "advertising injury" because patent infringement is not caused by "advertising activity." *See, e.g., Iolab Corp. v. Seaboard Surety Co.,* 15 F.3d 1500, 1505 n. 3 (9th Cir.1994) (patent infringement not caused by conduct "arising out of advertising"); *Everest and Jennings v. American Motorists Ins.,* 23 F.3d 226, 228, 229 (9th Cir.1994) (patent infringement not caused by conduct "committed in the course of advertising"); *Intex Plastics Sales Co. v. United National Insurance Co.,* 23 F.3d 254, 255, 256 (9th Cir.1994) (patent infringement not caused by conduct "occurring in the course of the named in-

---

mary policy in its terms and conditions of coverage. Additionally, an umbrella policy can impose on the insurer a duty to defend for claims not covered by the underlying insurance.

sured's advertising activities"); *Aetna Casualty & Surety Co. v. Superior Court,* 19 Cal.App.4th 320, 325, 328, 23 Cal.Rptr.2d 442 (1993) (patent infringement not caused by conduct "occurring in the course of the named insured's advertising activities"). *See also Microtec Research, Inc. v. Nationwide Mutual Ins. Co.,* 40 F.3d 968, 970, 971 (9th Cir.1994) (misappropriation of intellectual property not caused by "offenses that result from the advertising of your products or work," language found in one of the disputed policies).[2] Because the causation language is missing in the policies here, however, these decisions are not directly applicable. Second, the policy definition in this case does not include the terms "unfair competition" or "piracy" which are the somewhat open-ended terms on which expansive claims of coverage have traditionally been laid. *See, e.g. National Union Fire Ins. Co. v. Siliconix, Inc.,* 729 F.Supp. 77, 79 (N.D.Cal.1989) (finding that the term "piracy" could incorporate patent infringement).

Two recent California Supreme Court decisions plainly set forth the analysis which this court must use in deciding the motion: *Bank of the West,* 10 Cal.Rptr.2d 538, 833 P.2d 545 (holding that an insured's payments for violations of the state Unfair Business Practices Act, Cal.Bus. & Prof.Code § 17203, are not insurable "damages" under the insured's advertising injury insurance policies), and *AIU Insurance Co. v. FMC Corp.,* 51 Cal.3d 807, 274 Cal.Rptr. 820, 799 P.2d 1253 (1990) (finding that pollution clean-up costs incurred under CERCLA[3] are insurable "damages"). Both *Bank of the West* and *AIU* apply the same three-part test to interpret insurance contracts. First, if the contract language is

clear and explicit, it governs. Cal.Civ.Code § 1638; *Bank of the West,* 2 Cal.4th at 1264, 10 Cal.Rptr.2d 538, 833 P.2d 545. Second, "if the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Cal.Civ.Code § 1649, *quoted in Bank of the West,* 2 Cal.4th at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545; *see also AIU,* 51 Cal.3d at 822, 274 Cal.Rptr. 820, 799 P.2d 1253. This second inquiry does not rely upon the subjective beliefs of the insured but only protects "the objectively reasonable expectations of the insured." *Bank of the West,* 2 Cal.4th at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545, *quoting AIU,* 51 Cal.3d at 822, 274 Cal.Rptr. 820, 799 P.2d 1253. If the second step of the inquiry does not resolve the ambiguity, then in the third and final step of the analysis, the ambiguity must be resolved against the insurer. *Bank of the West,* 2 Cal.4th at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545; *see AIU,* 51 Cal.3d at 822, 274 Cal.Rptr. 820, 799 P.2d 1253.

In determining whether or not the language is clear or ambiguous, and in considering the objectively reasonable expectations of the insured based upon the contract language, "[t]he words of a contract are to be understood in their ordinary and popular sense." Cal.Civ.Code § 1644; *Bank of the West,* 2 Cal.4th at 1266, 274 Cal.Rptr. 820, 799 P.2d 1253. The language of the contract should be viewed in its context[4], and given a natural, common sense interpretation as opposed to one based upon "abstract philology." 2 Cal.4th at 1265, 274 Cal.Rptr. 820, 799 P.2d 1253. *See The Cooper Cos., Inc. v. The*

---

**2.** It is possible that one of the policies in *Microtec* may not have included causation language. *Id.* at 969. However, the opinion appears to assume that the language appears in all of the policies. *Id.* Defendants also cite one other case where an insurance policy appeared to lack any reference to advertising activities, as here. *Gencor Indus. v. Wasau Underwriters Ins. Co.,* 857 F.Supp. 1560, 1562–63 (M.D.Fla.1994) (policy issued by National Union Fire Insurance Company). However, the court began its analysis of the seven policies at issue in *Gencor* with the assumption that *all of them* included language requiring a connection to advertising activities. *Id.* at 1564. Thus, the court did not address the significance of the omission in National Union's

policy, and it provided no argument that could be useful here.

**3.** Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.*

**4.** "[*L*]*anguage in a contract* must be construed in the context of that instrument as a whole, and in the circumstances of that case, and *cannot be found to be ambiguous in the abstract.*" *Bank of the West,* 2 Cal.4th at 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (emphasis in the original) (citation omitted).

*Transcontinental Co.*, 31 Cal.App.4th 1094, 37 Cal.Rptr.2d 508, 515 (Ct.App.1995) (courts "may also employ 'common sense' " in interpreting the contract (quoting *Bank of the West*, 2 Cal.4th at 1276, 10 Cal.Rptr.2d 538, 833 P.2d 545)).

The *Bank of the West*'s emphasis on context over "abstract philology" becomes critical in the interpretation of the policy language at issue here.

### III

Plaintiff argues that patent infringement is included within the policy language insuring advertising injury as "infringement of title" or "misappropriation of style of doing business." Plaintiff consults the dictionary to find that the word "title" can refer to ownership of property such as a patent. Under this argument, the phrase "infringement of ... title" could refer to infringement of a patent. Similarly, plaintiff argues that "misappropriation of style of doing business" could refer to patent infringement. Neither claim is reasonable, however, when the words "title" and "style of doing business" are examined in the context of their use and in the light of common sense.

First, and perhaps most significantly, there is the glaring absence of the word "patent" anywhere in the policy language defining advertising injury. The language defining "advertising injury" includes "slander" "libel," "right of privacy," "advertising ideas," "style of doing business," and "copyright." These are specific terms connected to well known legal categories, just as a claim of patent infringement is a distinct legal claim. But there is not a mention of "patent" anywhere in the definition or elsewhere in the policy. Surely if coverage for patent infringement were anticipated there would be some mention of the term itself just as "copyright" is explicitly listed. Several courts have commented vigorously on the signifi-

cance of the omission of any reference to patent in the definition of advertising injury:

> [I]t is nonsense to suppose that if the parties had intended the insurance policy in question to cover patent infringement claims, the policy would explicitly cover infringements of "copyright, title or slogan," but then include patent infringement, *sub silentio*, in a different provision, by reference to "unauthorized taking of ... [the] style of doing business."

*Gencor*, 857 F.Supp. at 1564 (quoting *St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys.*, 824 F.Supp. 583, 586 (E.D.Va.1993), *aff'd* 21 F.3d 424).[5] The *Gencor* court continued:

> It is even more absurd to suggest that the phrase "infringement of ... title", as used in the clause "infringement of copyright, title or slogan", encompasses patent infringement or inducement to infringe. Basic common sense dictates that if these policies covered any form of patent infringement, the word "patent" would appear in the quoted "infringement" clauses.

857 F.Supp. at 1564.[6] Moreover, as noted above, the policy language at issue here does not include the terms "piracy" or "unfair competition"; it lists well recognized and narrow categories of legal claims among which patent infringement is notably absent.

Second, neither the term "infringement of title" nor "misappropriation of style of doing business" suggests coverage of patent claims when these terms are viewed in the context of their use. One of the most significant parts of that context is that both terms are part of the definition of "advertising injury." There is nothing about the term "advertising injury" itself that remotely suggests coverage of patent infringement. Owens correctly notes that in every case involving litigation over "advertising injury," the policies have contained additional language restricting "advertising injury" coverage to occurrences "in

---

**5.** The *St. Paul Fire* court adopted this analysis under California law. 824 F.Supp. at 584.

**6.** In addition to *Gencor*, a second federal district court has interpreted the "infringement of title"

phrase to exclude patent infringement in policy provisions for advertising injury. *Atlantic Mutual Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423 (E.D.Pa.1994).

the course of advertising activity." Were the causation language present here the matter would be governed by clear authority. But the omission of the "arising out of" language, although removing the causation requirement, does not expand the substantive scope of the term "advertising injury." [7] In effect, Owens argues that the term "advertising" should not be understood as a word in common usage but as a collection of letters defined for the first time in the policy. This is not a reasonable approach to policy interpretation. The term was chosen for a reason, that reason was to cover advertising related injuries, and patent infringement is a tort that does not normally occur in connection with advertising.[8] *See Bank of the West*, 2 Cal.4th at 1275, 10 Cal.Rptr.2d 538, 833 P.2d 545 (citing with approval a case which found that "a claim of patent infringement does not 'occur[ ] in the course of ... advertising activities' within the meaning of the policy even though the insured advertises the infringing product, if the claim of infringement is based on the sale or importation of the product rather than its advertisement" (alterations in

original) (citing *Siliconix*, 729 F.Supp. at 80)). This is not a case in which the contract plainly signals that it is defining a word in an unusual way. Instead, a reasonable insured would read the contract as defining "advertising injury" in a conventional sense, and it is plaintiff who attempts to impose an unexpected meaning.[9]

Additional context is gleaned from the particular way in which "infringement of title" and "appropriation of style of doing business" are used. The term "infringement of title" is part of a list that includes copyright and slogan. In company with these terms, "title" apparently refers to a name, such as a name of a literary or artistic work, rather than to ownership of an invention or other thing. *See Atlantic Mutual Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423, 429 (E.D.Pa. 1994); *Gencor*, 857 F.Supp. at 1564. *See also Bank of the West*, 2 Cal.4th at 1276, 10 Cal.Rptr.2d 538, 833 P.2d 545 ("'infringement of copyright, title or slogan' typically occurs upon unauthorized reproduction or distribution of the protected material").[10]

7. Owens emphasizes that before 1986 defendants' policies explicitly restricted advertising injury to conduct "arising out of the insured's advertising activities." Owens argues that omission of the language therefore is significant to an understanding of the term "advertising." At oral argument, however, International's counsel explained that the deletion of the language was designed to free the coverage from the restriction to "the insured's advertising activities," as opposed to advertising activities undertaken by others for whom the insured could be responsible. Thus, the deletion of the old language was intended to expand the scope of the persons "insured," but not the scope of the concept "advertising injury."

8. It is not necessary to take a position of defendant's further argument that the term "advertising injury" necessarily applies only to activities arising in the course of advertising activity. By this argument defendants would replace the missing causation language by implication. Whatever the merits of the argument, and assuming that advertising injury may be covered even when not caused by advertising activity, the use of the term "advertising" still suggests some connection to that activity. Patent infringement is not normally related to advertising, and the parties have stipulated that the damage award in the underlying case was not in any way related to advertising.

9. Plaintiff raises one additional argument for disregarding the fact that the term being defined is "advertising injury." Plaintiff cites the rule that specific provisions prevail over a mere heading in the event of any conflict between them. *Oakland Bank of Commerce v. Washington*, 6 Cal. App.3d 793, 800, 86 Cal.Rptr. 276 (1970); *Stanley v. Safeco Ins. Co. of Am.*, 109 Wash.2d 738, 747 P.2d 1091, 1093 (1988). However, in this case, the phrase "advertising injury" is not a heading, but part of the policy text. Furthermore, there is no necessary contradiction between the term "advertising injury" and the terms "infringement of title" and "style of doing business."

10. Although plaintiff has managed to cite one case which interprets "infringement of title" more broadly, the case is distinguishable. *Merchants Co. v. American Motorist Ins. Co.*, 794 F.Supp. 611 (S.D.Miss.1992). In *American Motorist*, the phrase "infringement of title" was extended only to cover the alleged misappropriation of a customer list by a new enterprise that had broken off to compete with its parent company. *Id.* at 614–15, 618. Misappropriation of a customer list was construed by the court to be a type of advertising. *Id.* at 619. In contrast, the parties here have stipulated that the recovery in the underlying suit was for an injury that was not "in any way related to advertising."

Furthermore, the exclusion language in the policies at issue also suggests that "infringement of ... title" does not include patent infringement. Exclusion (H)(2) provides that trademarks are not protected, unless they are titles or slogans. (Farmer Decl., 9/18/92, Ex. B.) Therefore, in at least this section of the policy, the word "title" is used in the sense of name as opposed to property. Words like "title" may retain their meaning when they are used in different places of a policy. *See Helfand v. National Union Fire Ins. Co.,* 10 Cal.App.4th 869, 881, 13 Cal.Rptr.2d 295 (1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993) (interpreting the term "loss" by "examining the policy as a whole and the interplay between the defined concept of 'loss' and various related provisions").

Moreover, the context of the term "misappropriation of ... style of business" provides no succor to plaintiff. The immediately contiguous language is clearly limited to advertising activities: "Misappropriation of ... style of business" directly follows "[m]isappropriation of advertising activities," which brings the word "advertising" into the immediate context as a similar sort of activity also covered. *See Titan Corp. v. Aetna Casualty & Surety Co.,* 22 Cal.App.4th 457, 474 & n. 14, 27 Cal.Rptr.2d 476 (1994) (noting that California courts follow the principle of "ejusdem generis," that general words following a specific enumeration should be read as applying to the same general class of things as the

specifically enumerated things). This suggests that "style of business" refers to the outward appearance or signature of a business, the sort of claim comprised under trade dress. Patent infringement is not remotely similar to advertising activities or outward appearances. Whatever ambiguity may inhere in the term "style of doing business," it cannot fairly be stretched to cover patent infringement when the term "patent" is never whispered and when "advertising injury" is at issue.[11]

### III

For the reasons stated above, the "advertising injury" portion of defendants' policies does not cover patent infringement. Therefore, defendants' motion for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED.

IT IS SO ORDERED.

11. *See St. Paul Fire and Marine Ins. Co.,* 824 F.Supp. 583; *American Economy Ins. Co. v. Reboans, Inc.,* 852 F.Supp. 875 (N.D.Cal.1994). Additionally, the *Gencor* decision discussed above found "[m]isappropriation of advertising ideas or style of doing business" did not cover patent infringement. 857 F.Supp. at 1564. In *St. Paul Fire,* applying California law, the Virginia District Court found that "style of doing business" is essentially synonymous with the more widely used term "trade dress." 824 F.Supp. at 585. In defendants' other case, *American Economy,* the court focuses on the term "misappropriation" and finds that "misappropriation" doctrine has historically served to protect only quasi-property rights not already protected by the more traditional theories of intellectual property law such as patents and trademarks. 852 F.Supp. at 879. Thus, a technical under-

standing of misappropriation doctrine would rule out applicability to patents even without consideration of the phrase "style of doing business."

Plaintiff suggests that there is a troubling aspect to defendants' reliance on the *St. Paul Fire* and *American Economy* decisions: both cases rely on technical intellectual property interpretations of the policy terms rather than their "ordinary and popular sense." There is some force to this argument although it is somewhat weakened by the fairly technical approach taken to interpreting the terms "damages" and "unfair competition" in *Bank of the West,* 2 Cal.4th 1254, 10 Cal.Rptr.2d 538, 833 P.2d 545. But even if the terms "misappropriation" and "style of doing business" are interpreted loosely, they would not comprise patent infringement in the context of their use here.