**U.S. TEST, INC., Plaintiff/Counterclaim Defendant–Appellant,**

and

**Bobby Cobb, Counterclaim Defendant–Appellant,**

v.

**NDE ENVIRONMENTAL CORP., Defendant/Counterclaimant,**

and

**United Coastal Insurance Co., Defendant–Appellee.**

No. 99–1087.

United States Court of Appeals, Federal Circuit.

Nov. 19, 1999.

Rehearing Denied Dec. 17, 1999.

William David Kiesel, Roy, Kiesel & Tucker, P.L.C., of Baton Rouge, Louisiana, argued for Plaintiff/Counterclaim Defendant–Appellant and Counterclaim Defendant–Appellant.

Charles A. O'Brien, III, of Baton Rouge, Louisiana, argued for Defendant–Appellee.

Before MAYER, Chief Judge, MICHEL and LOURIE, Circuit Judges.

LOURIE, Circuit Judge.

U.S. Test, Inc. and Bobby Cobb appeal from the decision of the United States District Court for the Western District of Louisiana granting United Coastal Insurance Co.'s ("UCIC's") motion for summary judgment that UCIC had no duty to defend U.S. Test and Cobb in their patent infringement suit against N D E Environmental Corporation ("NDE"), and denying U.S. Test and Cobb's corresponding cross-motion. *See U.S. Test, Inc. v. NDE Envtl. Corp.*, No. 95–0199 (W.D.La. Oct. 16, 1998) (judgment). Because the district court correctly concluded that UCIC had no duty to defend U.S. Test and Cobb, we affirm.

## BACKGROUND

U.S. Test manufactures and sells the Model 200P, an ultrasonic device used to detect leaks in underground fuel storage tanks. *See* Statement of Material Facts Not in Dispute at 1, ¶ 2. U.S. Test solicits sales of the Model 200P by advertising in national trade journals, mailing brochures to potential customers, and presenting the Model 200P at national trade shows. *See id.* at 2, ¶ 3. U.S. Test also provides training seminars and instructions on the proper use of the Model 200P. *See id.* at 2, ¶ 4.

After competitor NDE acquired an exclusive license to two patents directed to the ultrasonic gauging of tanks, U.S. Patents 4,748,486 and 4,805,453 (the "Haynes patents"), NDE sent letters to several of U.S. Test's customers charging them with infringement of these patents in their use of the Model 200P. *See* Compl. for Decl. J. at 3, ¶ 8. In response to these letters, U.S. Test filed a declaratory judgment action against NDE, requesting the district court to declare that its actions did not infringe the Haynes patents, and that the patents were invalid and unenforceable. *See id.* at ¶¶ 10–12. NDE counterclaimed, alleging that U.S. Test infringed the Haynes patents by making, using, and selling products that infringe the patents, as well as inducing others to perform methods and to use products that infringe the patents. *See* NDE Answer, Countercl., and Jury Demand at ¶¶ 18–21. NDE amended its answer and counterclaim and further asserted that U.S. Test was liable for contributory infringement of the '453 patent. *See* Am. Countercl. at 6, ¶ 11. NDE also joined Bobby Cobb, the CEO, president, and sole shareholder of U.S. Test, as a counter-defendant. *See id.* at 1, ¶ 1; 6, ¶ 12.

U.S. Test then filed an amended complaint, making UCIC, the insurance company from which it had purchased a general commercial liability insurance policy, a third-party defendant pursuant to Fed. R.Civ.P. 14. *See* Pl.'s Am. Supplemental Compl. at 1–2, ¶¶ 1, 3. U.S. Test alleged that under the "advertising injury" provision of the policy, UCIC was obligated to defend U.S. Test in the patent infringe-

ment action brought by NDE and to pay any damages awarded against it. *See id.* That provision reads as follows:

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement.

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS—COVERAGES A and B. We will have the right and duty to defend any "suit" seeking those damages.

\*     \*     \*     \*     \*     \*

    b. This insurance applies to "personal injury" only if caused by an offense:

\*     \*     \*     \*     \*     \*

    (2) Arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you. . . .

\*     \*     \*     \*     \*     \*

    c. This insurance applies to "advertising injury" only if caused by an offense:

\*     \*     \*     \*     \*     \*

    (2) Committed in the course of advertising your goods, products or services. . . .

\*     \*     \*     \*     \*     \*

J.A. at A150–A151. As relevant here, Section V. of the policy defines "advertising injury" and "personal injury" as follows:

1. "Advertising injury" means injury arising out of one or more of the following offenses:

    a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

\*     \*     \*     \*     \*     \*

    d. Infringement of copyright, title, or slogan.

\*     \*     \*     \*     \*     \*

16. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

\*     \*     \*     \*     \*     \*

    d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services. . . .

\*     \*     \*     \*     \*     \*

J.A. at A155, A157. In its answer, UCIC asserted, inter alia, that it had no duty to defend U.S. Test under the policy. *See* Ans. at 3, ¶ 8.

U.S. Test and Cobb (hereinafter "U.S. Test") and UCIC cross-moved for summary judgment on the issue whether UCIC had a duty to defend U.S. Test. The district court, from the bench, granted UCIC's motion for summary judgment and denied U.S. Test's cross-motion. The court held that UCIC had no duty to defend U.S. Test, because, under the plain language of the policy, patent infringement does not constitute "advertising injury." *See* Tr. at 34–35. The court reasoned that if the policy were meant to cover patent infringement, it would have included such language in the policy, as it did for "infringement of copyright, title or slogan." *See id.* at 34. The court also noted that the disparagement by "oral or written publication" portion of the "advertising injury" provision did not cover patent infringement, as that language should be "read in the context of libel and slander." *Id.* Finally, the court held that UCIC did not waive its right to deny U.S. Test coverage under the "advertising injury" provision of the policy. *See id.*

U.S. Test appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

### A. *Standard of Review*

■ Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). We review a district court's grant of summary judgment de novo, *see K-2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 52 USPQ2d 1001, 1003–04 (Fed. Cir.1999), reapplying the summary judgment standard, *see MEHL/Biophile Int'l Corp. v. Milgraum,* 192 F.3d 1362, 52 USPQ2d 1303, 1305 (Fed.Cir.1999).

■ An insurance policy is a contract, and we must therefore apply the relevant state contract law in construing the terms of the policy. *See, e.g., Augustine Med., Inc. v. Progressive Dynamics, Inc.,* 52 USPQ2d 1515, 1517 (Fed.Cir.1999) (applying Minnesota law to interpret a settlement agreement). In this case, the parties agree that the law of Louisiana controls. Under Louisiana law an insurance policy is interpreted using standard contract principles, *see Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,* 630 So.2d 759, 763 (La.1994), and "[w]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate," *Peterson v. Schimek,* 729 So.2d 1024, 1029 (La. 1999); *see also Schroeder v. Board of Supervisors,* 591 So.2d 342, 345 (La.1991). Whether a contract provision is clear or ambiguous is a question of law, *see Interstate,* 630 So.2d at 764, and if a court determines that the provisions are unambiguous, then the interpretation and meaning of those provisions are also issues of law, reviewed *de novo, see Banque De Depots v. Bozel Mineracao E Ferroligas,* 728 So.2d 533, 534 n. 1 (La.Ct.App.1999).

### B. *Duty to Defend*

U.S. Test argues that the district court erred in holding that UCIC had no duty to defend it against NDE's patent infringement allegations. U.S. Test contends that NDE's allegations are covered under the "infringement of copyright, title or slogan" portion of the "advertising injury" provision of the policy. While apparently conceding that the language of the provision does not expressly provide coverage for allegations of patent infringement, U.S. Test asserts that the provision is nonetheless ambiguous, because the phrase "infringement of . . . title" could include allegations of patent infringement. Citing *Rymal v. Woodcock,* U.S. Test asserts that under Louisiana law, if the coverage of a policy is ambiguous, and an alleged lawsuit could be included in the coverage, then the policy must be interpreted to obligate the insurer to defend the insured. *See Rymal v. Woodcock,* 896 F.Supp. 637 (W.D.La. 1995). U.S. Test supports its argument by noting that Louisiana law construes insurance policies liberally so as to favor the insured. U.S. Test alternatively contends that UCIC had a duty to defend it based on the "disparagement of goods" offense listed in either the "advertising injury" or the "personal injury" provisions of the UCIC policy. U.S. Test interprets "goods" to encompass patents, and asserts that NDE's allegations of inducement of infringement are effectively allegations of disparagement of goods.

UCIC responds that the district court properly concluded that it had no duty to defend U.S. Test. UCIC contends that NDE's allegations are clearly not included in the "infringement of copyright, title or slogan" offenses, as there is no reference to patent infringement in this provision, and because these terms refer to well-known aspects of advertising. UCIC specifically asserts that the plain meaning of the phrase "infringement of . . . title" does not include NDE's patent infringement allegations, as that phrase is limited to the

improper use of another's name or designation in an advertisement. As for U.S. Test's "disparagement of goods" argument, UCIC responds that the Haynes patents that were allegedly disparaged by the assertion that it did not infringe them are not "goods."

■ These issues, requiring interpretation of relevant state contract law,[1] are issues of first impression for our court. Under Louisiana law, an insurance policy is an agreement between parties, and it is thus interpreted using standard contract principles as set forth in the Louisiana Civil Code. *See Interstate*, 630 So.2d at 763. "The parties' intent as reflected by the words in the policy determine the extent of coverage," and that intent is determined in accord with the "general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning." *Id.; see also* La. Civ.Code Ann., art. 2047 (West 1987). If the language of an insurance policy is unambiguous, the policy must be enforced as written. *See Smith v. Matthews*, 611 So.2d 1377, 1379 (La.1993); *see also* La. Civ.Code Ann., art. 2046 (West 1987). Although it is well-established that an ambiguous provision in an insurance policy must be construed in favor of the insured, *see Smith*, 611 So.2d at 1379; *see also* La. Civ.Code Ann., art. 2056 (West 1987) (codifying *contra proferentem),* Louisiana rules of contract construction do not authorize a court to generate an ambiguity by "perversion of the words [of the contract] or the exercise of inventive powers" when the contract terms adequately express the parties' intent, *Peterson,* 729 So.2d at 1029.

The seminal case of *American Home Assurance Co. v. Czarniecki,* 255 La. 251, 230 So.2d 253 (La.1969), set forth Louisiana law regarding an insurer's obligation to defend an insured against lawsuits brought by third-party plaintiffs. In *American Home,* the Supreme Court of Louisiana summarized an insurer's duty to defend as follows:

> [T]he insurer's duty to defend ... is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend ... its insured.

*American Home,* 230 So.2d at 259 (citations and paragraphing omitted); *see also Steptore v. Masco Constr. Co.,* 643 So.2d 1213, 1218 (La.1994). That court has further expanded an insured's duty to defend to encompass situations in which the pleading against the insured evinces the mere *possibility* of liability under the insurance policy. *See Steptore,* 643 So.2d at 1218; *Meloy v. Conoco, Inc.,* 504 So.2d 833, 839 (La.1987).

■ While the Louisiana Supreme Court has not spoken on the present issue, we are confident that it would conclude that the plain language of the relevant provisions unambiguously precludes coverage for allegations of patent infringement. Turning first to the "advertising injury" provision, "advertising injury" is defined in relevant part as "infringement of copyright, title or slogan." It is unequivocally clear from the plain language of this definition that the parties did not intend that

---

1. We are mindful, however, that the policy language is fairly standard and the legal principles fairly universal. The definition of "advertising injury" set forth in the policy is consistent with the standard language used in commercial general liability policies. *See*

*Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.,* 193 F.3d 742, 52 USPQ2d 1288, 1290 (3d Cir.1999) (citing Lee R. Russ & Thomas F. Segalla, 9 Couch on Insurance 3d § 129:25 (1997)).

patent infringement be covered under the policy as a form of "advertising injury." The word "patent" is notably absent from the enumerated offenses, while other forms of intellectual property infringement, namely copyright, are specifically included in the enumerated offenses. Indeed, if the parties intended that allegations of patent infringement be covered by the policy, the parties could have readily included it within the definition of "advertising injury." *See United Nat'l Ins. Co. v. SST Fitness Corp.*, 182 F.3d 447, 452 n. 2 (6th Cir.1999). We agree with the legion of federal and state courts, construing identical or closely similar policy language, that have uniformly held that omission of the offense of patent infringement reflects the parties' clear intent that allegations of that offense are not covered by the policy.[2] As the district court stated in *Gencor:*

> It is even more absurd to suggest that the phrase "infringement of ... title", as used in the clause "infringement of copyright, title or slogan", encompasses patent infringement or inducement to infringe. Basic common sense dictates that if these policies covered any form of patent infringement, the word "patent" would appear in the quoted "infringement" clauses.

*Gencor*, 857 F.Supp. at 1564, 32 USPQ2d at 1298. Because the plain language of the policy unambiguously reflects the parties' intent that allegations of patent infringement were not to be covered by the policy, we must enforce the policy as it was written and conclude that UCIC has no duty to

defend U.S. Test. *See American Home*, 230 So.2d at 259; *Smith*, 611 So.2d at 1379; *see also* La. Civ.Code Ann., art. 2046 (West 1987) ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

We also reject U.S. Test's attempt to inject ambiguity into this provision by claiming that "infringement of ... title" is tantamount to patent infringement. As with U.S. Test's preceding argument, this argument is a strained attempt to contort the plain meaning of this provision into providing coverage for acts not intended to be covered by the policy. We concur with the reasoning of several other courts that have construed the term "title," when grouped with the terms "slogan" and "copyright," to mean "name," *e.g.*, the name of a literary or artistic work, as opposed to the ownership of an invention. *See Owens–Brockway*, 884 F.Supp. at 368; *Atlantic Mut. Ins. Co. v. Brotech Corp.*, 857 F.Supp. 423, 429 (E.D.Pa.1994); *Maxconn*, 88 Cal.Rptr.2d at 755. Indeed, in view of the uniform nature of the considerable body of federal and state precedent against it, we are surprised that U.S. Test advances this argument before this court.[3]

*Rymal v. Woodcock*, the only case that even arguably departs from this line of cases, does not support U.S. Test's position. In that case, a district court held that an insurer had a duty to defend its

**2.** *See United Nat'l*, 182 F.3d at 452 n. 2; *Herman Miller, Inc. v. Travelers Indem. Co.*, 162 F.3d 454, 455, 49 USPQ2d 1223, 1224 (6th Cir.1998); *Heil Co. v. Hartford Accident & Indem. Co.*, 937 F.Supp. 1355, 1365 (E.D.Wis.1996); *Owens–Brockway Glass Container v. International Ins. Co.*, 884 F.Supp. 363, 367 (E.D.Cal.1995); *Gencor Indus., Inc. v. Wausau Underwriters Ins. Co.*, 857 F.Supp. 1560, 1564, 32 USPQ2d 1296, 1298 (M.D.Fla. 1994); *St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Sys.*, 824 F.Supp. 583, 586, 27 USPQ2d 1624, 1626 (E.D.Va. 1993); *Julian v. Liberty Mut. Ins. Co.*, 43 Conn.App. 281, 682 A.2d 611, 613–14 (Conn. App.1996) (following *Owens–Brockway, Gen-*

*cor, St. Paul*); *Maxconn Inc. v. Truck Ins. Exch.*, 74 Cal.App.4th 1267, 88 Cal.Rptr.2d 750, 756 (Cal.Ct.App.1999); *Filenet Corp. v. Chubb*, 324 N.J.Super. 476, 735 A.2d 1203, 1215–16 (N.J.Super.Ct.Law Div.1997).

**3.** The precedent is unequivocal that "infringement of title" cannot reasonably be construed to mean patent infringement. *See Owens–Brockway*, 884 F.Supp. at 367; *Classic Corp. v. Charter Oak Fire Ins. Co.*, 35 USPQ2d 1726, 1728 (C.D.Cal.1995); *Atlantic Mut.*, 857 F.Supp. at 429; *Maxconn*, 88 Cal.Rptr.2d at 754–58; *Julian*, 682 A.2d at 613–15.

insured in a patent infringement suit, where the insurance policy at issue covered "advertising injury," defined as "libel, slander, defamation, violation of right of privacy, **piracy, unfair competition,** or infringement of copyright, title or slogan." *See Rymal*, 896 F.Supp. at 638. As indicated by the district court's own emphasis, the court concluded that coverage should be based on what it determined was the ambiguous nature of the words "piracy" and "unfair competition," *see id.*, not on the word "title." Indeed, patent infringement is often referred to as piracy in that the infringer is considered to have pirated the patented invention.

U.S. Test relies on the definition of "title" in Black's Law Dictionary in an attempt to equate the word "title" with the word "patent," but that reference offers no support for its position. As that dictionary indicates, the only relationship between the words "title" and "patent" is that the title of a patent provides a brief description of the nature of the invention. *See* Black's Law Dictionary 1485 (6th ed. 1990) ("[T]he title of a patent is the short description of the invention, which is copied in the letters patent from the inventor's petition.... "). Accordingly, we conclude that the "infringement of ... title" does not reasonably include a duty to defend against allegations of patent infringement.

U.S. Test alternatively contends that UCIC had a duty to defend it based on the "disparagement of goods" offense, as enumerated under both the "advertising injury" and "personal injury" provisions of the policy. U.S. Test asserts that NDE alleged that U.S. Test was liable for inducing infringement, and that this conduct included the oral and written communication from U.S. Test to its customers that its products did not infringe the Haynes patents. U.S. Test states that such communications disparaged the Haynes patents in order to induce these prospective licensees to continue using U.S. Test's products. UCIC responds that it has no

duty to defend under the "advertising injury" or "personal injury" provisions, as the Haynes patents that were allegedly disparaged are simply not "goods." UCIC further asserts that NDE's allegation that U.S. Test advised potential customers that the MP200 did not infringe the Haynes patents is legally inadequate to constitute disparagement, as there is no allegation that U.S. Test falsely denigrated NDE's products.

We agree with UCIC and conclude that U.S. Test's argument is without merit. To construe the term "goods" to encompass "patents" would distort the term "goods" beyond all recognition, and take that term out of the commercial context in which it is being used. First of all, a patent is a right to exclude, not a "good." Second, Chapter 9 of Title 10, the secured transactions chapter of Louisiana's commercial law, and Article 9 of the Uniform Commercial Code ("UCC"), the provision on which Chapter 9 is based, both clearly indicate that patents are not "goods" in any generally accepted commercial sense. Section 9–106 and the accompanying comment (denoted as "purposes") in Chapter 9 provide that goods are explicitly excluded from the definition of "general intangibles," while patents are included within that definition:

§ 9–106. Definitions; account; general intangibles

"General intangibles" means any intangible personal property (including things in action) *other than goods,* accounts chattel paper, documents, instruments, investment property, and money.

Purposes:

The term "general intangibles" brings under this Article miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security. Examples are goodwill, literary rights, and rights to performance. *Other examples are* copyrights, trademarks and *patents,* except to the extent that they may be excluded by Section 9–104(a).

La.Rev.Stat. Ann., tit. 10, § 9–106 & purposes (West 1993) (emphasis added).

Likewise, Article 9 of the UCC specifically excludes patents from the commercial definition of "goods." Section 9–102(a)(44) first provides that "general intangibles" do not qualify as "goods" under that article:

> § 9–102. Definitions and Index of Definitions
>
> (a) [Article 9 definitions.] In this article:
>
> (44) The term [goods] ... does not include accounts, chattel paper, commercial tort claims, deposit accounts, documents, *general intangibles*, instruments, investment property, letter-of-credit rights, letters of credit, money, or oil, gas, or other minerals before extraction.

U.C.C. § 9–102(a)(44) (Supp.1999) (emphasis added). Section 9–102(a)(42) and the accompanying comment then indicate that intellectual property, *e.g.*, a patent, is within the definition of "general intangible":

> (42) "General intangible" means any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction. The term includes payment intangibles and software.
>
> Comment 5.d. "General Intangible"; "Payment Intangible."
>
> "General intangible" is the residual category of personal property, including things in action, that is not included in the other defined types of collateral. Examples are various categories of *intellectual property*. ...

*Id.*, § 9–102(a)(42) & cmt. 5.d. (emphasis added). Thus, Article 9 explicitly excludes patents from its definition of "goods."

Finally, we note that while Louisiana has not adopted the sales provision set forth in Article 2 of the UCC, that portion nevertheless provides further support for the conclusion that patents are not properly regarded as "goods." General intangibles are noticeably absent from that article's definition of "goods" under § 2–105(1). Section § 2–105(1) defines "goods" as follows:

> § 2–105. Definitions: Transferability; "Goods"; "Future" Goods; "Lot"; "Commercial Unit".
>
> (1) "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (Section 2–107).

U.C.C. § 2–105(1) (1989). In view of those items specifically enumerated as "goods," it cannot seriously be argued that a patent is a "good" under Article 2.

For the foregoing reasons, we agree with UCIC that the parties did not intend that the term "good" in the commercial liability policy include patents. Moreover, even if we could accept U.S. Test's argument that a patent constitutes a "good" under the insurance policy, UCIC correctly indicates that U.S. Test was not disparaging the Haynes patents, but was merely asserting that its own products did not infringe those patents.

## C. *Waiver*

■ U.S. Test argues that even if the alleged injuries would not have otherwise been covered under the "advertising injury" or "personal injury" provisions, UCIC nevertheless waived its right to deny coverage under these provisions. U.S. Test asserts that under Louisiana law, UCIC, when notified of the litigation, had an affirmative duty to make a good faith determination whether the policy obligated UCIC to defend U.S. Test against NDE's allegations. U.S. Test contends that the issue of

whether UCIC made a good faith determination of its duty to defend before denying coverage is an issue of material fact precluding summary judgment. UCIC responds that it did not waive its right to deny coverage. UCIC argues that whenever U.S. Test derived a novel theory of coverage, UCIC responded that the policy did not cover that risk. Moreover, UCIC argues that under Louisiana law, an insurer must knowingly and voluntarily relinquish its rights, and U.S. Test failed to present evidence that UCIC intended to do so.

In *Tate v. Charles Aguillard Insurance & Real Estate, Inc.*, the Supreme Court of Louisiana undertook an extensive analysis of the law of waiver as it relates to insurance policies. *See Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So.2d 1371, 1373–75 (La.1987). The court summarized that law as follows:

> [W]e conclude that the best view is that waiver may apply to any provision of an insurance contract under which the insurer *knowingly and voluntarily* elects to relinquish his right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered. Of course, reliable proof of such a knowing and voluntary waiver is necessary and the burden of producing it, as in the proof of obligations generally, falls on the party who demands performance.

*Id.* (emphasis added); *see also* La. Civ. Code. Ann., art. 1831 (West 1987). That court subsequently stated that:

> It is well established that an insurer is charged with knowledge of the contents of its own policy. In addition, notice of facts which would cause a reasonable person to inquire further imposes a duty of investigation upon the insurer, and failure to investigate constitutes a waiver of all powers or privileges which a reasonable search would have uncovered.

*Steptore*, 643 So.2d at 1216 (citations omitted).

While the Louisiana Supreme Court has not spoken directly on this issue, we agree with UCIC that it would likely hold that UCIC did not waive its right to avoid liability under the policy. U.S. Test fails to direct us to any evidence in the record indicating that UCIC "knowingly and voluntarily" waived its right to avoid liability. *See Tate*, 508 So.2d at 1375 ("[W]aiver may apply to any provision of an insurance contract under which the insurer *knowingly and voluntarily* elects to relinquish his right, power or privilege to avoid liability ....") (emphasis added). We are also unpersuaded by U.S. Test's arguments that UCIC waived its rights by failing to make a good faith determination that the allegations in the complaint were not covered. UCIC did respond to U.S. Test's claims, and no further inquiry or investigation beyond the language of NDE's counterclaim and amended counterclaim was necessary for UCIC to conclude that the relevant allegations all pertained to patent infringement. UCIC, being fully aware that the provisions of its policy unambiguously do not include coverage for patent infringement, did not need to make any further inquiry into those allegations. Accordingly, we conclude that UCIC did not waive its right to avoid liability under the policy.

## CONCLUSION

Based on the unambiguous language of the relevant provisions in the insurance policy, the district court properly concluded that UCIC had no duty to defend U.S. Test against NDE's allegations of patent infringement. The district court also did not err in concluding that UCIC did not waive its right to deny coverage under the policy.

Accordingly, we

*AFFIRM.*